The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Gregory B. McCOY, Defendant–Appellant.

No. 95CA0347.

Colorado Court of Appeals,
Div. V.

Dec. 27, 1996.

Rehearing Denied Feb. 27, 1997.

Certiorari Denied Oct. 20, 1997.

578

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, M. Catherine Duba, Assistant Attorney General, Denver, for Plaintiff–Appellee.

E. Ronald Beeks, Evergreen, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Gregory B. McCoy, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of two counts of aggravated robbery, two counts of menacing with a deadly weapon, and theft, and challenges the sentences imposed. We affirm the conviction but reverse as to the consecutive nature of the sentences.

Defendant was one of four robbers of an armored car guard. As the guard attempted to deliver money to a grocery store, three masked men, at least two of whom were armed, took the bag of money which he was carrying. They escaped in defendant's car which was driven by the other accomplice.

The police soon located the car in the parking lot of a nearby apartment complex. Witnesses testified that the car entered the apartment complex at a high rate of speed and four men exited the car and entered one of the apartments. As the police arrived, three of the men exited through a rear window of the apartment, threw a bag onto the roof of the apartment building, and hid in shrubbery.

Police officers found defendant and two of the accomplices in the shrubbery with over $20,000 in their clothing. A subsequent search of the apartment revealed the fourth robber and, among other incriminating evidence, a large amount of money, the bag and gun taken from the guard, and several other guns. The bag on the roof also contained money.

## I. Peremptory Challenge

■ Defendant contends that the trial court erred in overruling his objection to the prosecution's allegedly discriminatory peremptory challenge of a black prospective juror. We disagree.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the equal protection clause of the Fourteenth Amendment prohibited a prosecutor's exercise of peremptory challenges to strike jurors on account of race.

■ In *People v. Cerrone*, 854 P.2d 178 (Colo.1993), the supreme court followed *Batson*'s three-step process for evaluating claims of racial discrimination in jury selection. First, the defendant must make a *prima facie* showing that the prosecution has excluded potential jurors on account of race. Second, if the requisite showing is made, the burden shifts to the prosecution to articulate a race-neutral explanation for excluding the jurors in question. Finally, if the prosecution presents a neutral explanation, the trial court must consider all relevant circumstances to determine whether the defendant has established purposeful discrimination.

■ A defendant may establish a *prima facie* case of purposeful discrimination by showing that the jury in question was selected under a practice providing the opportunity for discrimination, the persons excluded were members of a cognizable racial group, and members of that group were substantially underrepresented on the jury. A defendant does not need to show that he or she is a member of the same racial group that was underrepresented on the venire. A *prima facie* showing is made if the totality of the relevant facts gives rise to an inference of discriminatory purpose. *People v. Cerrone, supra.*

■ In stating a race-neutral explanation for its exercise of peremptory challenges, a prosecutor must provide an explanation based on something other than the race of the juror, and unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. This burden is not met by general assertions that the prosecution did not discriminate, but the basis stated for the challenge need not rise to the level justifying an exercise of a challenge for cause. *People v. Cerrone, supra.*

■ In the third step of the *Batson* process, a trial court must determine as a matter of historical fact whether the defendant has carried his or her burden of proving purposeful discrimination. Because the issue at this step in the *Batson* process is a pure issue of fact, largely turning on credibility determinations, reviewing courts should give great deference to the findings made by the trial court. *People v. Gardenhire*, 903 P.2d 1165 (Colo.App.1995).

■ In determining whether the prosecution intended to discriminate, or whether the prosecution's race-neutral explanation should be believed, the trial court should look at all the relevant evidence, both direct and circumstantial. Circumstantial evidence of invidious intent may include proof of disproportionate impact. Moreover, the burden is on the defendant to prove the existence of purposeful discrimination. However, the defendant must have the opportunity to challenge the credibility of whatever explanation the prosecution presents. *People v. Cerrone, supra.*

Here, defendant objected when the prosecution exercised a peremptory challenge against a black juror.

The prosecutor explained that the juror had shown a lack of interest in the proceedings and in interacting with other jurors. The prosecutor further noted that the juror had stated he was not interested in the news, that he had remained stoic throughout a humorous situation that occurred during voir

dire which caused other jurors to laugh, and, when asked to comment concerning the homicide of his sister, the juror responded that it "was her problem." The court found that defendant had established a prima facie case of discrimination because the challenge would have removed the only black juror on the jury panel at that time.

The court determined that the prosecution had provided a race-neutral explanation, but that such explanation was not sufficient to exclude the only black juror on the panel, and that the juror was being excluded for reasons of race. It therefore sustained defendant's objection but with the qualification that the prosecution could renew its challenge if another black juror was introduced into the panel. The court explained that:

I'm finding it is for racial reasons at this point in time. However, if we get another juror in there that's African–American and you want to exclude [the first prospective black juror] at that time then that would put a whole different cast on it at that time. It would appear not [to] be just for race reasons, because we would then have another African–American in the jury box. So having another African–American in the jury box would make a difference, in the court's mind, as to your motivation. So at this point I'm finding it is racially motivated and I'm sustaining the objection.

Later, the prosecution renewed its challenge to the first black juror when another black juror was on the jury panel. Defendant again objected, and the prosecution responded that it was relying upon the same explanation it had used earlier. The court determined that the prosecution's explanation was sufficient in light of the new circumstances and overruled defendant's objection.

As noted, if the prosecution presents a race-neutral explanation, the trial court must consider all relevant circumstances, including proof of disproportionate impact, to determine whether a defendant has established purposeful discrimination. *People v. Cerrone, supra.* The trial court initially found that the prosecution had provided a race-neutral explanation but was properly concerned that the only black juror on the panel was being excluded. *See People v. Portley,*

857 P.2d 459 (Colo.App.1992) (if no members of a cognizable racial group are left on jury as result of prosecutor's exercise of peremptory challenges, defendant has established a prima facie case of purposeful discrimination).

Despite that initial finding, the trial court was not prohibited from reconsidering its ruling in light of new circumstances. *See Forbes v. Goldenhersh,* 899 P.2d 246 (Colo. App.1994) (trial court which had entered a partial summary judgment ruling did not err in considering evidence on that issue during trial and in reversing its ruling in its final judgment).

Further, since resolution of a *Batson* challenge largely turns on evaluating credibility, a reviewing court should exercise great deference with regard to a trial court's determination on such a challenge. *People v. Gardenhire, supra.*

Thus, we conclude that the trial court did not abuse its discretion in overruling defendant's second objection to the prosecution's peremptory challenge.

## II. Prosecutor's References to Defendant's Criminal Record

Defendant next contends that the prosecutor's elicitation of testimony concerning, and references in closing argument to, his criminal record constitute plain error. We disagree.

When no contemporaneous objection to the asserted error is made at trial, appellate review is limited to determining whether the error or defect constitutes plain error. *Wilson v. People,* 743 P.2d 415 (Colo. 1987). Under plain error review, a decision may be reversed only if, after review of the entire record, we can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *People v. Kruse,* 839 P.2d 1 (Colo.1992).

Here, defendant told the police that he was reluctant to consent to questioning because he had previously been imprisoned and, if sent to prison again, did not want his fellow

prisoners to consider him a "snitch." He ultimately agreed to talk but refused to sign a *Miranda* advisement form and a written confession. He was questioned again the next day and signed an advisement and wrote on it: "Yes, I would of [sic] signed yesterday."

At trial, defendant argued that the police had fabricated the confession and had convinced him to sign the advisement on the second day of questioning by telling him that he would not be charged if he did so. The People therefore assert that the evidence of defendant's criminal history explained his reluctance to sign the advisement form and was necessary to rebut his defense theory.

Even if we were to assume that the evidence of defendant's criminal history was inadmissible, however, such error would not amount to plain error.

As more fully described above, the evidence of guilt presented at trial was overwhelming. As the culmination of a rapid investigation of robbery that led directly to defendant's car and the apartment complex where it was found, police officers found defendant hiding in shrubbery with over $20,000 in his clothing. Further, defendant gave a statement to the police in which he admitted his participation in the robbery.

Thus, we conclude that the evidence presented at trial against defendant was overwhelming and, accordingly, any possible error would not have been such as to undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.

### III. Warrantless Search

■ Defendant next contends that the trial court erred in not suppressing the fruits of the warrantless search of his car by Yogi, the police bloodhound, including Yogi's "identification" of defendant. We disagree.

■ The general rule against warrantless searches is subject to, *inter alia*, two exceptions pertinent here. First, the automobile exception provides that a police officer may conduct a warrantless search of an automobile if: (1) there is probable cause to believe that it contains evidence of a crime; and (2)

the circumstances create a practical risk of the vehicle's unavailability if the search is postponed until a search warrant is obtained. *People v. Edwards*, 836 P.2d 468 (Colo.1992).

■ Second, under the exigent circumstances exception, when a reasonable police officer believes that to delay acting to obtain a warrant would, in all likelihood, permanently frustrate an important police objective no warrant need be obtained. Exigent circumstances may exist when there is a bona fide pursuit of a fleeing suspect, a risk of immediate destruction of evidence, or a colorable claim of emergency threatening the life or safety of another. *People v. Drake*, 785 P.2d 1257 (Colo.1990).

Defendant contends the requirements of the automobile exception were not satisfied. We need not address this contention, however, because we conclude that the exigent circumstances exception applies.

Here, the armed robbery had occurred minutes before the search, a witness to the robbery had identified the automobile as the one used in the robbery, another witness had seen the automobile enter the lot at a high rate of speed just before the police arrived and had seen three men exit therefrom, and the police had been informed that the suspects were armed.

Therefore, the police officers were pursuing fleeing suspects, and a reasonable police officer could have believed that there was a possibility that the armed fleeing suspects posed a threat to the residents of the apartment complex and that evidence of their identity could be obtained from the vehicle.

Accordingly, we conclude that exigent circumstances justified the warrantless search of defendant's car, and therefore, the trial court did not err in admitting the fruits of the search.

### IV. Unrecorded Bench Conferences

■ Defendant next contends that the trial court erred by conducting numerous unrecorded bench conferences. We disagree.

■ A district court in a criminal case may not conduct bench or side-bar conferences off the record, unless the parties so request or so consent. *Jones v. District Court,* 780 P.2d 526 (Colo.1989).

Here, the trial court informed defendant that bench conferences would not be recorded unless requested and defendant did not object. Further, the court recorded the conferences when requested to do so.

Thus, we conclude that defendant consented to the procedure used by the court, and accordingly, the court did not err in following that procedure.

### V. Propriety of Consecutive Sentences

■ Defendant next contends the trial court erred in concluding that consecutive sentences were mandatory for the two counts of aggravated robbery of which he was convicted. We agree.

If a person is convicted of two or more separate "crimes of violence," as defined in § 16–11–309(2)(a)(I), C.R.S. (1996 Cum. Supp.), arising out of the same incident, the trial court must impose consecutive sentences for such crimes. Section 16–11–309(1), C.R.S. (1996 Cum.Supp.).

Section 16–11–309(4), C.R.S. (1986 Repl. Vol. 8A), however, requires the indictment or information to allege a "crime of violence" in a separate count.

Section 18–4–302(4), C.R.S. (1986 Repl.Vol. 8B) provides that if a defendant is convicted under 18–4–302(1)(b), C.R.S. (1986 Repl.Vol. 8B), the court must sentence defendant in accordance with the provisions of § 16–11–309, C.R.S. (Cum.Supp.).

Defendant asserts that since he was not separately charged with a "crime of violence" and was convicted under § 18–4–302, C.R.S. (1986 Repl.Vol. 8B) generally, but not § 18–4–302(1)(b) specifically, consecutive sentences of the aggravated robbery convictions were not mandatory. We agree that that analysis comports with the statutory scheme.

Section 18–4–302(1)(b) provides that a person is guilty of aggravated robbery if during the act of robbery or immediate flight therefrom he or she knowingly wounds or strikes the person robbed or any other person with a deadly weapon or by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury.

Section 18–4–302(1)(c), C.R.S. (1996 Cum. Supp.) provides that a person is guilty of aggravated robbery if, during the robbery or immediate flight therefrom, he has present a confederate, aiding or abetting the perpetration of the robbery, armed with a deadly weapon, with the intent, either on the part of the defendant or confederate, if resistance is offered, to kill, maim, or wound the person robbed or any other person, or by the use of force, threats, or intimidation puts the person robbed or any other person in reasonable fear of death or bodily injury.

■ In *People v. Terry,* 791 P.2d 374 (Colo.1990), the supreme court held that if an express statutory provision requires crime of violence sentencing, a separate crime of violence count otherwise mandated by § 16–11–309(4) is not required. However, § 16–11–309 still requires that a prosecutor plead and prove a violent crime count against a defendant whenever the substantive criminal statute does not specifically require sentencing under § 16–11–309. *People v. Close,* 867 P.2d 82 (Colo.App.1993).

*People v. Swanson,* 638 P.2d 45 (Colo. 1981), relied upon by the People, is distinguishable because there the defendant was specifically charged and convicted of a crime of violence.

Here, the charging document charged two counts of aggravated robbery but did not state a statutory section. Defendant's mittimus indicates, in pertinent part, that he was found guilty of two counts of aggravated robbery under § 18–4–302. The jury was instructed that it could find defendant guilty of aggravated robbery if, during the act of robbery or the immediate flight therefrom, the defendant or a confederate who aided or abetted the perpetrator of the robbery, knowingly put the person robbed, or any other person, in reasonable fear of death or bodily injury, by the use of force, threats, or intimidation, with a deadly weapon. This

instruction was based upon § 18–4–302(1)(c), not § 18–4–302(1)(b).

Further, the prosecution contended in its closing argument that defendant had been one of the four men involved in the robbery but, since the robbers were wearing masks, the jury did not have to find that defendant personally threatened the victims with a deadly weapon.

Thus, we conclude that, since defendant was not charged separately with a "crime of violence" and was not convicted under a criminal statute which specifically requires sentencing under the violent crimes statute, the trial court erred in determining that it was required to impose consecutive sentences on the aggravated robbery counts. Accordingly, we must remand for resentencing.

On remand, the trial court may, within its discretion, impose consecutive sentences but is not required to do so. *See* § 18–1–408(3), C.R.S. (1986 Repl.Vol. 8B).

## VI. Validity of Complicity Instruction

Following the completion of briefing in this case, defendant argued, by way of supplemental authority and at oral argument, that the complicity instruction given to the jury requires reversal because that instruction was held erroneous in *People v. Rodriguez*, 914 P.2d 230 (Colo.1996). That case was decided after the completion of briefing here. However, because the issue was not addressed in the trial court and because the People have not had an opportunity to respond, we decline to address this issue. *See People v. Unruh*, 713 P.2d 370 (Colo.1986) (court declines to consider new legal argument raised in supplemental authorities filed two weeks before oral argument). We also note that the supreme court has decided to revisit the issue of whether the pattern jury instruction on complicity violates due process. *See Bogdanov v. People*, No. 96SC34, *cert. granted*, August 6, 1996.

The judgment is affirmed; the portion of the sentences requiring that they be served consecutively is reversed; and the cause is remanded for further proceedings.

MARQUEZ and RULAND, JJ., concur.