**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Michah Tyron COLLINS, Defendant–Appellant.**

**No. 06CA1173.**

Colorado Court of Appeals,
Div. III.

May 29, 2008.

Rehearing Denied July 3, 2008.

John W. Suthers, Attorney General, Jennifer A. Berman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Michah Tyron Collins, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempt to commit first degree burglary, possession of a weapon by a previous offender, and a crime of violence. We reverse and remand the case for further proceedings.

## I. Background

On an early morning, the victim awoke to noises outside of his house. He heard a loud bang at the back door and went to check on the noise. He saw two masked men outside the door, one of whom pushed open the door with a shotgun barrel. The victim managed to slam the door shut and called 911.

Two police officers arrived shortly thereafter. They saw a man running from the back of the house toward the street. One of the officers ordered the man to stop, but the man turned around and ran toward the house's backyard. The officers searched the area and found defendant hiding in a shed one block from the victim's house. One of the officers identified defendant as the man he had seen when he arrived at the victim's house.

The People charged defendant with criminal attempt to commit first degree burglary, possession of a weapon by a previous offender, and a crime of violence. A jury found defendant guilty on all counts. The court sentenced defendant to two concurrent sentences of ten years and eighteen months in the custody of the Department of Corrections.

## II. The *Batson* Objection

Defendant contends the district court clearly erred in overruling his *Batson* objection to the prosecutor's peremptory strike against Ms. S., an African–American potential juror. We agree.

### A. District Court Proceedings

Following voir dire, the prosecutor used his first peremptory strike against Ms. S., the only African–American potential juror on the panel at the time. Defendant's counsel objected, pointing out that there were only two African–American jurors in the venire, and Ms. S. was one of them. The court treated the objection as one pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The prosecutor offered the following reasons for striking Ms. S.: (1) "she didn't respond to anything"; (2) "she had her arms crossed during the entire voir dire"; (3) she did not bring up the fact that her husband was a defendant in a domestic violence case (a fact the prosecutor had learned from a juror questionnaire) when he asked whether any of the potential jurors had a relative or friend who had been accused of a crime; (4) she slept through part of defense counsel's voir dire; and (5) "she's a nurse." The following exchange then took place:

> [DEFENDANT'S COUNSEL]: I would point out, for the record, if you look at her right now, it was the same demeanor she had when I was doing mine, she was not asleep, she's wearing glasses.
>
> [PROSECUTOR]: She was asleep, I sat there and watched her.
>
> [COURT]: I didn't.
>
> [DEFENDANT'S COUNSEL]: I will tell the Court that the same body language is exhibited on at least 15 of the 34 jurors. Most importantly, she did respond to all the questions, she was at least forthcoming on the answer sheet about her being a victim.

The prosecutor did not deny defendant's counsel's statements about the other potential jurors' body language. Instead, the prosecutor told the court, "I'm more than willing to substitute, if this is race based, I'm willing to substitute Mr. [B.] for Ms. [S.], and Mr. [B.] is an African–American male. If you want a race neutral reason, I'm more than happy to have him on my jury." The court responded, "It's not how it works."

The district court then sustained defendant's *Batson* objection, stating:

> Here's what I'm going to do then, at this point, with regard to what you have given me, [prosecutor], I can't find this is a clear and reasonably specific explanation, a legitimate reason. I think you would have brought up to me various information—

wait a minute, let me make a ruling. I don't have enough to indicate she slept through it, arms crossed, nurse, I don't think it makes it.

The prosecutor made a further record on his stated reasons, reiterating that Ms. S. had not responded well to him, she had not laughed at his jokes, she crossed her arms and legs, she had slept, and she had not responded to his question whether anyone had a relative or friend accused of a crime. The court remained unpersuaded, however, and ruled: "At this time, I'm going to find there is not clear and reasonable, specific explanation for excluding this prospective juror, at least at this point in time."

When Mr. B. joined the jury panel, the prosecutor accepted the panel and requested a bench conference. The prosecutor renewed his peremptory strike against Ms. S., proffering the following rationale:

Mr. [B.] is on the jury, there's no race-related issue in this case, and I think I'm going to tell the Court, my biggest concern, she did not respond well to me and she was sleeping, which indicates she's not going to pay attention in this case.

The court then decided to deny defendant's *Batson* objection, stating:

Just looking at something here, there was a U.S. Supreme Court case which held that an individual had been stricken because he had long, unkempt hair, mustache and beard.... It sounds to me that if it was a person that appeared that way, they said that Step Two [of the *Batson* analysis] is not very high.

I'm also obligated to consider the totality of the circumstances. I have to say, I think, at this point, at the outset, [the] People's first challenge was a black juror, the only one seated up there, okay, so, of course, that heightens my concern....

....

But you also, which also was a suggestion to me that there was a reason for that, and now I see you have no problem with Mr. [B.]. I cannot see, at this point, for the record, their effort to challenge Ms. [S.] was racially motivated in this case, and I think I'm obligated to consider all facts and circumstances.

...

I'm going to find, by preponderance of the evidence, that the decision to exclude Ms. [S.] was not motivated by racial—or because of her race. Again, I'm considering the totality of the circumstances, which I think were not present at the initial challenge.

Defendant's counsel made a further record that the prosecutor's reasons for striking Ms. S. from the jury panel applied to many of the other potential jurors, and that there was a nurse on the panel whom the prosecutor had not challenged.

Defendant's counsel subsequently used a peremptory strike against Mr. B.

### B. Applicable Law

■ The use of peremptory challenges to purposefully discriminate against jurors of a protected class violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Batson*, 476 U.S. at 89, 106 S.Ct. 1712; *Craig v. Carlson*, 161 P.3d 648, 653 (Colo.2007). "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson*, 476 U.S. at 86, 106 S.Ct. 1712. "Although a defendant has no right to a 'petit jury composed in whole or in part of persons of [the defendant's] own race,' he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria." *Powers v. Ohio*, 499 U.S. 400, 404, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (citation omitted) (quoting *Strauder v. West Virginia*, 100 U.S. 303, 305, 25 L.Ed. 664 (1879)).

■ "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859,

114 L.Ed.2d 395 (1991) (plurality opinion) (quoting *Personnel Adm'r v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)); *see id.* at 372–73, 111 S.Ct. 1859 (O'Connor, J., concurring).

■ "Batson outlines a three-step process for evaluating claims of racial discrimination in jury selection under the Equal Protection Clause." *People v. Cerrone,* 854 P.2d 178, 185 (Colo.1993) (citing *Hernandez,* 500 U.S. at 358–59, 111 S.Ct. 1859 (plurality opinion), and *Batson,* 476 U.S. at 93–98, 106 S.Ct. 1712); *accord Snyder v. Louisiana,* — U.S. —, —, 128 S.Ct. 1203, 170 L.Ed.2d 175 (Mar. 19, 2008); *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Valdez v. People,* 966 P.2d 587, 589 (Colo.1998). The opponent of a peremptory strike must make out a prima facie case of racial discrimination. If the opponent of the strike does so, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation. If the proponent of the strike meets that burden, the trial court must decide whether the opponent of the strike has proved purposeful racial discrimination. *Snyder,* — U.S. at —, 128 S.Ct. 1203; *Purkett,* 514 U.S. at 767, 115 S.Ct. 1769; *Hernandez,* 500 U.S. at 358–59, 111 S.Ct. 1859 (plurality opinion); *Hernandez,* 500 U.S. at 375, 111 S.Ct. 1859 (O'Connor, J., concurring); *Batson,* 476 U.S. at 96–98, 106 S.Ct. 1712. "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769; *accord Valdez,* 966 P.2d at 589.

Here, defendant challenges the district court's ultimate determination that he had not proved purposeful racial discrimination. Thus, we focus on the third step of the *Batson* analysis.

■ At step three, the district court must determine whether the defendant "has established purposeful discrimination." *Batson,* 476 U.S. at 98, 106 S.Ct. 1712. The court must review all the evidence to decide whether the opponent of the strike has shown, by a preponderance of evidence, that the proponent of the strike sought to exclude a poten-

tial juror because of a discriminatory reason. *Craig,* 161 P.3d at 654.

■ The decisive question at step three is whether counsel's race-neutral explanation for a peremptory challenge should be believed. *Hernandez,* 500 U.S. at 365, 111 S.Ct. 1859 (plurality opinion); *Miller–El v. Cockrell,* 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) *(Miller–El I); see also People v. Gabler,* 958 P.2d 505, 507 (Colo.App.1997) (at step three "the plausibility of the prosecutor's race-neutral explanation becomes relevant, such that incredible explanations 'may (and probably will) be found to be pretexts for purposeful discrimination'" (quoting in part *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769)). In assessing the credibility of the proponent of the strike, the court may consider a number of factors, including the proponent's demeanor, how reasonable or improbable the proponent's explanations are, and whether the proffered rationale has some basis in accepted trial strategy. *Miller–El I,* 537 U.S. at 339, 123 S.Ct. 1029; *Craig,* 161 P.3d at 654.

■ Because a reviewing court is not as well positioned as the district court to make such credibility determinations, we review a district court's decision at step three only for clear error. *Snyder,* — U.S. at —, 128 S.Ct. 1203; *Miller–El I,* 537 U.S. at 339, 123 S.Ct. 1029; *Hernandez,* 500 U.S. at 364, 111 S.Ct. 1859 (plurality opinion); *Hernandez,* 500 U.S. at 372, 111 S.Ct. 1859 (O'Connor, J., concurring); *Valdez,* 966 P.2d at 590.

## C. Analysis

■ In *Snyder,* — U.S. —, 128 S.Ct. 1203, the prosecutor articulated two race-neutral reasons for exercising a peremptory strike against an African–American potential juror: (1) the potential juror appeared nervous during questioning; and (2) the potential juror, a student, might want to return a verdict on a lesser charge so as to avoid a penalty phase trial and thereby not miss as many classes. The Supreme Court held, based on an analysis of the surrounding circumstances, including facts pertaining to prospective jurors whom the prosecutor did not strike, that the prosecutor's second reason was pretextual. *Id.* at —, 128 S.Ct. 1203.

Because the trial court judge had not made an express determination regarding the prosecutor's first reason—the potential juror's demeanor—the Court refused to presume the judge credited that reason. *Id.* at ——, 128 S.Ct. 1203. Thus, the Court concluded that the adverse inference created by the use of the pretextual reason was not overcome by the first reason, and reversed the defendant's conviction. *Id.* at ——, 128 S.Ct. 1203.

The circumstances here are very similar to those in *Snyder.* At least three of the race-neutral reasons articulated by the prosecutor are affirmatively refuted by the record, and the district court did not specifically credit the others.

The prosecutor asserted generally that Ms. S. "didn't respond to anything," and failed to respond when he "asked if anybody had any relatives or friends that had been accused of a crime." The prosecutor told the court he had asked that question to see if Ms. S. would respond and told the court that other potential jurors had responded to the same question.

The People acknowledge that the record shows that Ms. S. responded to all questions she was asked and concede that the prosecutor never asked the question whether any potential juror had a relative or friend accused of a crime. We also observe that the prosecutor did not ask Ms. S. any questions concerning the details of her husband's domestic violence case, a fact which suggests pretext as it "undermines the persuasiveness of the claimed concern." *Miller–El v. Dretke,* 545 U.S. 231, 246, 250 n. 8, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) *(Miller–El II); see Gabler,* 958 P.2d at 508.

When the prosecutor stated that he struck Ms. S. because she was a nurse, he explained that nurses are sympathetic to defendants and tend to be forgiving, and therefore he does not generally keep nurses on the jury. As Ms. S. stated on her questionnaire, however, she was not a nurse, but rather worked as a program assistant at a hospital. Nor did the prosecutor inquire into her profession or ask her about her experiences in the health care field. Here, again, the prosecutor's failure to inquire into any facts concerning Ms. S.'s profession suggests pretext. *See*

*Miller–El II,* 545 U.S. at 246, 125 S.Ct. 2317; *Gabler,* 958 P.2d at 508. Of even greater significance is the fact the prosecutor accepted three white health care workers as jurors, including a nurse. *See Snyder,* —— U.S. at ——, 128 S.Ct. 1203; *Miller–El II,* 545 U.S. at 241, 125 S.Ct. 2317 ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step."); *Gabler,* 958 P.2d at 508.

The People nevertheless contend the district court's ultimate ruling was not clearly erroneous because two of the prosecutor's stated reasons—Ms. S.'s body language and her sleeping during voir dire—are not refuted by the record. However, as in *Snyder,* the district court did not make any finding crediting these reasons. Therefore, we cannot presume that the court did so. *See Snyder,* —— U.S. at ——, 128 S.Ct. 1203. Nor can we assume, based on the record, that the prosecutor would have exercised a challenge against Ms. S. based solely on these reasons. *See id.* at ——, 128 S.Ct. 1203.

We observe that, if anything, the record shows the district court was not persuaded by the prosecutor's explanation concerning Ms. S.'s sleeping and demeanor. In initially sustaining defendant's *Batson* objection, the court stated, "I don't have enough to indicate she slept through it, arms crossed, nurse, I don't think it makes it." Nothing the court said in ultimately denying the objection indicated it had changed its mind concerning those specific explanations.

 We are not persuaded by the People's argument that the prosecutor's reason for excusing Ms. S. was race-neutral because he later accepted another African–American, Mr. B., on the jury. While the presence of other persons similar in relevant respects to the stricken potential juror may be relevant in determining whether the prosecutor's stated reason for striking the potential juror is pretextual, it is not dispositive because the refusal to strike one potential juror does not foreclose the possibility of a discriminatory

motive in striking another similar juror. *See Miller–El II,* 545 U.S. at 249–50, 125 S.Ct. 2317 (holding that, under the circumstances, the "late-stage decision to accept a black panel member" did not "neutralize the early-stage decision to challenge a comparable venireman"); *Batson,* 476 U.S. at 95, 106 S.Ct. 1712 ("'A single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions.'" (quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266 n. 14, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977))). The striking of a single potential juror for a discriminatory reason violates the Equal Protection Clause even where jurors of the same race as the stricken juror are seated. *United States v. Ferguson,* 935 F.2d 862, 865 (7th Cir.1991); *United States v. Gordon,* 817 F.2d 1538, 1541 (11th Cir.1987), *vacated in part on other grounds on reh'g,* 836 F.2d 1312 (11th Cir.1988); *State v. Rahman,* 199 W.Va. 144, 483 S.E.2d 273, 285 (1996).

*People v. McCoy,* 944 P.2d 577 (Colo.App. 1996), on which the People rely, does not require a contrary result. In that case, the division concluded that the district court could reconsider its ruling sustaining a *Batson* challenge regarding an African–American potential juror based on the changed circumstance that another African–American was later seated on the jury panel. *Id.* at 581. Unlike here, the record in *McCoy* did not contradict several of the prosecutor's reasons, and the record showed the district court ultimately credited a specific race-neutral reason articulated by the prosecutor.

Nor is our decision in this case contrary to our decision in *People v. Robinson,* 187 P.3d 1166, 2008 WL 2202065 (Colo.App. No. 05CA1231, May 29, 2008). In *Robinson,* the record did not affirmatively refute any of the prosecutor's race-neutral reasons, as the record does in this case.

In sum, we conclude that the district court clearly erred in overruling defendant's *Batson* objection to Ms. S. Accordingly, defendant's convictions must be reversed. *See Gabler,* 958 P.2d at 509.

### III. Jury Instructions

Defendant also contends that the district court erroneously instructed the jury in three respects: (1) the elemental instruction on attempt omitted the statutory language that the defendant must act with the kind of culpability otherwise required for the commission of the underlying offense; (2) the burglary instruction failed to identify the ulterior crime of robbery and the instructions as a whole failed to instruct the jury on the elements of robbery; and (3) the complicity instruction omitted the statutory language that the defendant must have intended to promote or facilitate the commission of the crime and contained misleading language. Because these issues may arise in the event of a new trial, we address them briefly.

■ The People concede that the elemental instruction on criminal attempt, Instruction 12, omitted the statutory language regarding the requisite mental state; however, they argue that Instruction 14 contained the omitted statutory language and, when read together, the two instructions adequately informed the jury of all the elements of criminal attempt. Although we agree with the People that there was no reversible error, we reaffirm that it is better practice to include all the statutory elements in one instruction rather than omitting an essential element from the elemental instruction describing the offense. *People v. Caldwell,* 43 P.3d 663, 671 (Colo.App.2001) ("The preferable practice is to include the *mens rea* element of an offense in the instruction defining the offense.").

As for the burglary instruction, the People concede that the district court erred in failing to instruct the jury on the predicate crime of robbery and its elements. *See People v. Archuleta,* 191 Colo. 482, 485, 554 P.2d 307, 310 (1976); *People v. Archuleta,* 180 Colo. 156, 160, 503 P.2d 346, 348 (1972). Therefore, in the event of a retrial, the court should instruct the jury on those elements.

Finally, we conclude the district court did not err in using the pattern complicity instruction. *See Bogdanov v. People,* 941 P.2d 247, 253–54 (Colo.1997), *modified,* 955 P.2d 997 (Colo.1997), *disapproved of on other grounds by Griego v. People,* 19 P.3d 1 (Colo.

2001); *People v. Close*, 22 P.3d 933, 937 (Colo.App.2000), *aff'd*, 48 P.3d 528 (Colo. 2002).

## IV. Mittimus

Defendant contends that the mittimus contains errors. However, our disposition of the *Batson* issue renders this contention moot, and therefore we need not address it.

The judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

Judge CASEBOLT and Judge RUSSEL concur.