24CA1269 Peo in Interest of JRM 02-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1269
Adams County District Court No. 21JV106
Honorable Caryn A. Datz, Judge

The People of the State of Colorado,

Appellee,

In the Interest of J.R.M. and L.P-S., Children,

and Concerning D.R.P.,

Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE GRAHAM*
Dunn and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

Heidi Miller, County Attorney, Conor Hagerty, Assistant County Attorney, Westminster, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this dependency and neglect proceeding, D.R.P. (mother) appeals the juvenile court's judgment adjudicating J.R.M. and L.P-S. (the children) dependent and neglected after a jury trial. We affirm.

## I.    Background

¶ 2    The Adams County Department of Human Services filed a petition in dependency and neglect, which it later amended, regarding the children. In 2022, the juvenile court adjudicated the children dependent and neglected. A division of this court reversed mother's adjudication and remanded the case for a new trial. *See People in Interest of J.R.M.*, 2023 COA 81, ¶ 21.

¶ 3    The Department filed a second amended petition in dependency and neglect due to mother's lack of engagement and issues related to her sobriety.

¶ 4    The juvenile court held a four-day adjudicatory jury trial. At the close of evidence, the jury returned verdicts finding that (1) mother abandoned J.R.M.; (2) mother mistreated or abused the children; (3) the children lacked proper parental care as a result of mother's acts or failures to act; (4) the children's environment was injurious to their welfare; and (5) mother failed or refused to provide

1

the children with proper or necessary subsistence, education, medical care, or any other care necessary for their health, guidance, or well-being.

## II. Discussion

¶ 5 On appeal, mother contends that the juvenile court reversibly erred when it (1) declined to grant a mistrial after an ongoing caseworker improperly interacted with a juror and twice violated the court's evidentiary orders while testifying; and (2) denied her challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986). We disagree with mother's contentions.

### A. Mistrial

#### 1. Applicable Law and Standard of Review

¶ 6 "A mistrial is a drastic remedy that is warranted only when the prejudice to the [moving party] is so substantial that its effect on the jury cannot be remedied by other means." *People v. Cousins*, 181 P.3d 365, 373 (Colo. App. 2007) (quoting *People v. Dore*, 997 P.2d 1214, 1221 (Colo. App. 1999)). A trial court has broad discretion to grant or deny a motion for a mistrial, and we will not reverse its decision absent an abuse of that discretion and prejudice to the moving party. *People v. Salas*, 2017 COA 63, ¶ 9. "A trial

2

court can better evaluate any adverse effect that improper testimony might have upon a jury than can a reviewing court. Thus, absent an abuse of discretion, the trial court's denial of a motion for mistrial will not be disturbed on review." *People v. Ned*, 923 P.2d 271, 274 (Colo. App. 1996).

¶ 7 Similarly, a juvenile court "has substantial discretion in deciding questions concerning the admissibility of evidence and broad discretion to determine the relevancy of evidence, its probative value and its prejudicial impact." *E-470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 23 (Colo. 2000). Therefore, we will not disturb the juvenile court's ruling absent an abuse of that discretion. *See id.*

¶ 8 A juvenile court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People in Interest of A.N-B.*, 2019 COA 46, ¶ 9.

## 2. Additional Facts

### a. Improper Interaction with a Juror

¶ 9 On the second day of trial, mother's counsel told the juvenile court that an ongoing caseworker and advisory witness had "walked up to a juror and gave her a box of tissues" and that "[s]he should

3

not be interacting with the jury in that way." Counsel then moved for a mistrial.

¶ 10 The juvenile court denied the motion for a mistrial, finding that the act did not "rise[] to the level of biasing a juror towards the petitioner to the point where manifest injustice has occurred and requires a mistrial." The court instructed the county attorney to direct the caseworker not to have any interactions with the jury moving forward.

¶ 11 At a subsequent break in the proceedings, mother's counsel indicated that "not only did [the caseworker] provide a tissue box when we were up at the bench conference, but she's also been talking to the jury across the bar prior to this." Counsel described it as a "quick interaction."

¶ 12 When questioned by the juvenile court, the caseworker said that the juror said to her, "My husband says I sneeze a lot. I have to stop at three." And the caseworker responded, "Here you go." When the court questioned the juror, the juror said, "We were talking about sneezing. And I said, 'I have allergies.' And then I made a joke that my husband says when I sneeze that I only get, like, four sneezes before he stops saying 'Bless you.'" The juror

indicated that she had no further discussion with the caseworker and that the interaction did not affect her ability to be fair in this case.

¶ 13 Mother's counsel renewed the motion for a mistrial. The juvenile court again denied the motion, finding that what occurred was "an innocuous exchange that had nothing to do with the matters of this case or the trial procedures or any of the witness testimony, and [the juror] has been questioned and has indicated that it had no influence on her in this proceeding."

b. Violations of the Juvenile Court's Evidentiary Orders

¶ 14 Prior to the adjudicatory trial, both parties filed motions and proffers regarding limitations on evidence. The juvenile court excluded evidence of mother's prior cases, including a dependency and neglect case, with the exception of a single recent criminal case if mother were to testify. The court also ruled that, with the exception of the recent criminal case, evidence that mother was arrested, had outstanding warrants, was on probation, was in jail or absconded, or was in the Department of Corrections would not be permitted. The court later modified its order and permitted testimony regarding the time periods that mother was incarcerated

5

but "without mention of which facility or any specifics regarding the conviction or sentence, subject to the [c]ourt's prior ruling regarding the use of any felony conviction for purposes of impeachment should [mother] testify." The court ordered the parties to inform any potential witness of the orders prior to testifying and to provide a limiting instruction.

¶ 15    At the beginning of the caseworker's testimony, the county attorney asked the caseworker about the child protection concerns that led to the opening of this case. The caseworker testified that "the original [referral] was because [L.P-S.] was born in the hospital. He did not test positive for substance abuse, but there was a record of that being an issue in [mother's] past pregnancies." Mother's counsel objected and moved for a mistrial, arguing that this testimony violated the juvenile court's order prohibiting evidence of mother's prior dependency and neglect case. The court declined to grant a mistrial, finding that the requested remedy was "extreme" but that the caseworker's statement "rises to the level of manifest injustice." The court decided to "instruct the jury to disregard the last answer and strike the answer" and to admonish the county attorney regarding the expectation that his witnesses understand

6

the court's pretrial evidentiary rulings. In a subsequent discussion, the court found that the caseworker "eliciting this information, unprompted by the question with knowledge of . . . this [c]ourt's pretrial ruling for which she was present for, constituted a rather gratuitous statement that inserted this information improperly before the jury and in violation of the [c]ourt's pretrial order."

¶ 16 Later, the caseworker testified about her contacts with mother to establish visits with the children. The caseworker indicated that she first contacted mother while mother was in custody and that she received notification via text that mother had moved facilities. The county attorney asked her, "Did that let you know that she was no longer in jail?" The caseworker responded, "She was no longer in that jail, correct." At a bench conference, mother's counsel argued that this testimony violated the juvenile court's pretrial evidentiary orders and requested a mistrial "because we have a pattern and record of the violations that seems intentional at this point." In the alternative, counsel asked that the caseworker be struck as a witness. The court elected to excuse the jury for the night and review the caseworker's testimony before making a ruling on the motion for a mistrial or an appropriate sanction.

## c. The Juvenile Court's Ruling

¶ 17 The next morning, the juvenile court found that "the most prejudicial violation to [mother] was the insertion of the reference of records of [mother's] prior pregnancies involving substance use as it did place [mother's] past conduct directly at issue." The court also found that the caseworker's additional violation involving her comment that mother "was no longer in that jail" "[did] not constitute prejudice warranting a mistrial." However, the court expressed concern "that the cumulative nature of the violations and the risk that additional violations of pretrial orders will occur, despite instructions or admonition of this [c]ourt, is likely." The court ruled the caseworker's testimony struck from the record and prohibited her from testifying further. The court also included a cautionary instruction about struck evidence in the written jury instructions.

## 3. Analysis

¶ 18 Mother argues that the juvenile court's striking the caseworker's testimony and prohibiting her from testifying further were insufficient to cure the prejudice to mother from the caseworker's interaction with the jury and improper testimony. She

8

asserts that the tissue box incident established a friendly rapport between the caseworker and the juror, which may have later caused the juror "to favor or align with the 'friendly' side." She further claims that the jury may have drawn impermissible character or propensity evidence under CRE 403 and 404 from the caseworker's reference to mother's past pregnancies involving drug use. Finally, mother asserts that "by mentioning that [she] was no longer in '*that* jail,' the jurors may have drawn the inference that [she] is a habitual criminal, as well as other similarly impermissible character or propensity conclusions."

¶ 19    We conclude that a mistrial was not warranted because the questioning of the juror, admonishment of the caseworker, curative instructions, striking of the caseworker's testimony, and prevention of further testimony from the caseworker were sufficient to remedy any prejudice to mother from the caseworker's actions.

¶ 20    A new trial is required only "where there is a reasonable possibility that the verdict was tainted by the introduction of outside . . . influences into the jury deliberations." *Wiser v. People*, 732 P.2d 1139, 1143 (Colo. 1987). We conclude that there is no reasonable possibility that the interaction between the juror and the

caseworker had any effect on the verdict. The record demonstrates that the nature of the interaction was brief and unrelated to the matters of this case. Moreover, the juvenile court instructed the county attorney to advise the caseworker that she must no longer interact with the jurors. And most importantly, the court took the remedial step of questioning the juror, during which the juror indicated that the interaction with the caseworker had no impact on her decision-making in the trial.

¶ 21    Regarding the caseworker's testimony that violated the juvenile court's pretrial evidentiary rulings, when inadmissible evidence is presented to the jury, "the factors relevant to the exercise of discretion to declare a mistrial include the nature of the inadmissible evidence, the weight of admissible evidence of guilt, and the value of a cautionary instruction." *People v. Vigil*, 718 P.2d 496, 505 (Colo. 1986). While the caseworker's statements were perhaps improper, we deem improper witness testimony to have less prejudicial impact when, as here, the reference was fleeting. *Id.*; *see also Salas*, ¶ 18 (the trial court did not abuse its discretion by denying a motion for a mistrial based on a witness's remark

referring to the defendant's prior criminality, in part because the "remark was fleeting [and] minimally prejudicial").

¶ 22 Moreover, even excluding the caseworker's testimony, the admissible evidence supporting the adjudication was substantial, as testified to by six additional witnesses for the county. These additional witnesses testified to a lack of prenatal care, a lack of mother's resources, mother's history with substance abuse and mental health issues, a shooting incident involving mother and L.P-S., trouble maintaining engagement with mother, and mother's lack of contact with J.R.M.

¶ 23 Furthermore, the juvenile court instructed the jury to disregard the caseworker's testimony and to not consider it as evidence in this case, and the court prevented any further testimony from the caseworker. The jury is presumed to have followed a curative instruction to disregard improper testimony. *See People v. Pernell*, 2014 COA 157, ¶ 44, *aff'd on other grounds*, 2018 CO 13. Thus, a curative instruction is generally adequate unless the improper testimony is so prejudicial that, but for the exposure, the jury might not have ruled against the respondent. *Id.* Here, the contested evidence was not so inflammatory in nature

that it could not be disregarded by the jury upon proper instruction. There is also no evidence that the jury did not heed the curative instruction. *People v. Garcia*, 2012 COA 79, ¶ 20 (we assume the jury heeds the court's curative instructions absent clear evidence to the contrary).

¶ 24    Accordingly, we conclude that the juvenile court did not abuse its discretion by denying mother's motions for a mistrial.

### B.    *Batson* Challenge

#### 1.    Applicable Law and Standards of Review

¶ 25    The Equal Protection Clause of the Fourteenth Amendment precludes a juror challenge based on race. *Batson*, 476 U.S. at 89. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Id.* at 86.

¶ 26    *Batson* provides a three-step process for evaluating claims of racial discrimination in jury selection. *People v. Johnson*, 2024 CO 35, ¶ 17; *People v. Austin*, 2024 CO 36, ¶ 7. First, the opponent of a peremptory strike must make a prima facie showing that the proponent used the strike against a potential juror because of race. *Johnson*, ¶ 18. As long as the totality of the relevant circumstances

raises an inference of racial motivation, the objecting party has satisfied their step-one burden. *Batson*, 476 U.S. at 96; *accord Valdez v. People*, 966 P.2d 587, 589 (Colo. 1998); *see also People v. Romero*, 2024 CO 62, ¶ 33 ("The step-one standard to determine whether an objecting party has satisfied the burden of making a prima facie showing that the challenged peremptory strike is race-based is 'easily satisfied.'" (quoting *Craig v. Carlson*, 161 P.3d 648, 655 (Colo. 2007))).

¶ 27     At step two, the proponent of the strike must offer a race-neutral explanation for the strike — an explanation based on something other than the race of the juror. *Romero*, ¶ 34. "Importantly, the trial court may not consider the plausibility or persuasiveness of a stated reason at step two." *Id.* at ¶ 35. Rather, "the court is limited to determining whether the striking party has advanced a reason that, 'on its face,' is race neutral." *Id.* (quoting *Austin*, ¶ 18).

¶ 28     During step three, the objecting party may rebut the striking party's race-neutral explanations. *Id.* at ¶ 36. The juvenile court's task at step three is to "decide[] whether the objecting party has met its burden of proving purposeful discrimination by weighing '"all of

the circumstances that bear upon the issue of" purposeful discrimination.'" *Austin*, ¶ 21 (quoting *People v. Madrid*, 2023 CO 12, ¶ 34). The court may consider "the striking party's demeanor, the reasonableness of the proffered race-neutral explanations, and whether the rationales are rooted in accepted trial strategy," *Madrid*, ¶ 34, as well as "the plausibility of the striking party's non-discriminatory explanations," *Romero*, ¶ 37 (quoting *People v. Beauvais*, 2017 CO 34, ¶ 23). "The decisive question at step three is whether counsel's race-neutral explanation for a peremptory challenge should be believed." *People v. Collins*, 187 P.3d 1178, 1182 (Colo. App. 2008).

¶ 29     "[T]he ruling at step three, regarding whether the objecting party has met the burden of establishing purposeful racial discrimination, is at its core a 'determination[] of credibility and demeanor.'" *Romero*, ¶ 42 (quoting *Beauvais*, ¶ 21). Such a determination lies "peculiarly within a trial judge's province." *Id.* (quoting *Beauvais*, ¶21). "[I]mplicit demeanor and credibility findings may suffice." *Id.* at ¶ 43.

¶ 30     The ultimate burden of persuasion rests with the opponent of the strike, *Purkett v. Elem*, 514 U.S. 765, 767 (1995), and, for a

*Batson* challenge to succeed, the court must "find by a preponderance of the evidence that one or more potential jurors were excluded because of race," *Valdez*, 966 P.2d at 590.

¶ 31 Different steps of the *Batson* analysis are subject to separate standards of review. *People v. Ojeda*, 2022 CO 7, ¶ 30. We review steps one and two de novo. *Id.* At step three, the trial court's final determination as to the existence of racial discrimination is an issue of fact that we review for clear error. *Id.*; *see also Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) ("On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous."); *Batson*, 476 U.S. at 98 n.21 ("Since the trial judge's findings in the context under consideration [at step three] largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.").

¶ 32 "[W]hile a trial court must consider all of the evidence bearing upon the plausibility of a non-discriminatory reason and the possibility of discriminatory animus, it need not make express findings about that evidence and how it contributes to the court's ultimate ruling." *Beauvais*, ¶ 32 (citations omitted). We defer to the trial court's step-three ruling "so long as the record (1) reflects that

15

the trial court considered all the relevant circumstances and (2) supports (including possibly through implicit demeanor and credibility findings) the trial court's ruling as to whether the objecting party proved purposeful racial discrimination by a preponderance of the evidence." *Romero*, ¶ 47.

## 2. Additional Facts

¶ 33 During voir dire, the county attorney asked prospective Juror Y.C., "Any ideas as to why there might be a burden of proof of preponderance of the evidence in these kinds of cases, these dependency and neglect cases?" Juror Y.C. responded, "I would say that the evidence it's a little more complex and the evidence is not as clear as, I guess, in a criminal case." Neither party further engaged with Juror Y.C. during voir dire.

¶ 34 The county attorney later used a peremptory strike to excuse Juror Y.C. Mother's counsel raised a *Batson* challenge, arguing that

> [Juror Y.C.], her last name sounds Hispanic. Her hair is dark. The color of her hair is brown. My client, just for the record, is also a person of color. She has brown hair. She has dark skin. Thus far, the composition of the jury based on the prior challenges is primarily the rest of the jury would primarily be white.

16

And I believe that this is evidence at this point sufficient to raise inference that discrimination has occurred . . . . And so I'm concerned that this is a race-based strike and so I challenge the strike at this time.

¶ 35 The county attorney explained, as his step-two race-neutral reason, that he did not strike Jury Y.C. on the basis of race but because Juror Y.C. had made comments on the questionnaire that the attorney "couldn't get a read on" and that the attorney "couldn't see what [Juror Y.C.] was going to stay for." The county attorney also explained that the first peremptory strike he used was for someone he "assume[d] . . . [was] Hispanic" and clearly "did not want to be here," and the second peremptory strike he used was for a "white male."

¶ 36 The juvenile court then stated:

As the respondent has made *a Batson* challenge as to Juror Number 1, [Y.C.], who the best the [c]ourt can tell her last name and her appearance in having dark hair I don't know that there's anything else before the [c]ourt to suggest that she is of Hispanic origin.

The first process is first the respondent can make out if there is a prima facie case if there was a juror struck on the basis of race noting that [mother] is Hispanic. Then the opposing party has an opportunity to provide an

17

explanation as to your excusal of that juror. [The county attorney] has indicated that it had nothing to do with the suspected background, race or heritage of [Juror Y.C.] that — I'm quoting — or paraphrasing that he could not get a good read on her; that has not been rebutted by the respondent.

¶ 37 The juvenile court then gave mother a chance to rebut the county attorney's proffered reason. Mother's counsel said, "I don't believe that this is a sufficient explanation. There's no indication to things that the juror said or reasons other than I can't get a good read that would be sufficient for a race neutral reason."

¶ 38 In the county attorney's final response, the attorney said, "I did excuse her more for she seemed unwilling or unwanting to thoroughly engage. Her responses were rather short, she was speaking softly. And that is ultimately what gave me pause to keep her on the jury."

¶ 39 The juvenile court then denied mother's *Batson* challenge, concluding that "[b]ased on the record before the [c]ourt and the explanation provided I don't find that there's sufficient evidence of purposeful discrimination in the exercise of the peremptory for [Juror Y.C.]."

### 3. Analysis

¶ 40 We first conclude that, while the juvenile court did not specifically find that mother's counsel made a prima facie showing under step one, it nevertheless proceeded to steps two and three. *See Romero*, ¶ 31. We do note, however, that the better practice is for the juvenile court to make specific findings regarding step one when, as is the case here, there appears to be little or no evidence to support a prima facie showing that the striking party used the strike against the juror because of race. The color of the juror's hair and her surname were the only reasons advanced by the proponent of the challenge. Even the court commented that, besides Juror Y.C.'s surname and hair color, "I don't know that there's anything else before the [c]ourt to suggest that she is of Hispanic origin." Thus, the court might very well have ended the matter at step one.

¶ 41 We next conclude that, while the juvenile court also did not make any specific findings regarding step two, the record demonstrates that the county attorney offered a race-neutral reason for excusing Juror Y.C. The burden at step two is not high; the county attorney needed only to tender a facially race-neutral

19

explanation. *See Valdez*, 966 P.2d at 591. "Unless a discriminatory intent is inherent in the [striking party]'s explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). At step two, the court does not consider whether the explanation is plausible or persuasive. *Johnson*, ¶ 19.

¶ 42 Here, the county attorney challenged Juror Y.C. because the attorney "couldn't get a read on her" and "couldn't see what she was going to stay for" and because the juror seemed unwilling to engage, proffered short responses, and spoke softly. These reasons are not rooted in Juror Y.C.'s or mother's race. Therefore, the county attorney met his step-two burden. *See Austin*, ¶ 18 ("If the striking party provides a reason that, on its face, is 'based on something other than the race of the juror,' she has met her step-two burden." (quoting *Johnson*, ¶ 36)).

¶ 43 Regarding step three, the juvenile court relied on "the record before the [c]ourt and the explanation provided" to find no "evidence of purposeful discrimination in the exercise of the peremptory for [Juror Y.C.]." Based on this, we can infer that the court used its discretion to consider all the relevant circumstances. *See Romero,*

¶ 47. We further conclude that the record supports the court's ultimate ruling at step three.

¶ 44    Recall first that the burden rests with the opponent of the strike — here, mother — to establish purposeful racial discrimination by a preponderance of the evidence. *Purkett,* 514 U.S. at 767; *Valdez,* 966 P.2d at 590. But the record shows that mother's counsel did not rebut, in any way, the county attorney's reasons for challenging Juror Y.C. Counsel's only purported rebuttal was that he said, "I don't believe that this is a sufficient explanation," and "[t]here's no indication to things that the juror said or reasons other than I can't get a good read that would be sufficient for a race neutral reason."

¶ 45    "The demeanor and credibility of the attorney exercising the peremptory strike frequently constitute the best evidence of whether the objecting party has established purposeful racial discrimination." *Romero,* ¶ 42. At no point here did the juvenile court state, or even hint, that it thought the county attorney "was being disingenuous or untruthful." *Id.* at ¶ 62. Implicit in this is that the court found the county attorney credible and his race-

neutral reason sincere. *See id.* at ¶ 52. And there is nothing in the record showing that the court clearly erred in so finding.

¶ 46 Based on the lack of rebuttal and the juvenile court's implicit finding on credibility and demeanor, it is apparent that the court was simply not persuaded that mother met her burden to prove purposeful racial discrimination by a preponderance of the evidence. And we do not perceive that finding to be clearly erroneous.

¶ 47 Under these circumstances, we conclude that the juvenile court properly denied mother's *Batson* challenge.

### III. Disposition

¶ 48 The judgment is affirmed.

JUDGE DUNN and JUDGE TOW concur.