The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Victor Arnold GABLER, Defendant–
Appellant.

No. 96CA1117.

Colorado Court of Appeals,
Div. IV.

Nov. 28, 1997.

Rehearing Denied Jan. 2, 1998.

Certiorari Denied June 29, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John J. Krause, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Julie Iskenderian, Deputy State Pub-

lic Defender, Denver, for Defendant–Appellant.

Opinion by Judge ROY.

Asserting error in the use of peremptory challenges, defendant, Victor Arnold Gabler, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of felony theft. We reverse and remand for a new trial.

Defendant was apprehended by department store security guards after being observed removing three bedskirts from the linen department and leaving the store with them without paying. The sole issue at trial was whether the merchandise taken was of sufficient value that the theft constituted a felony, or of a lesser value making the theft only a misdemeanor.

Defendant contends that the trial court erred in denying his objections to the prosecution's use of peremptory challenges to excuse two African–American prospective jurors. We agree.

■ The use of peremptory challenges to exclude prospective jurors because of their race violates the Equal Protection Clause. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *People v. Cerrone,* 854 P.2d 178 (Colo.1993); § 13–71–104, C.R.S.1997.

In *Batson,* the Supreme Court outlined a three-part test for determining whether a peremptory challenge constitutes purposeful discrimination against a cognizable group.

■ First, the defendant must make a prima facie showing that the prosecution used a peremptory challenge to exclude the prospective juror because of race. *Batson v. Kentucky, supra.* While the excluded juror must be a member of a cognizable group, the defendant need not be. *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). The facts and circumstances surrounding the use of peremptory challenges can raise the inference that the challenges were used to exclude potential jurors because of their race. *People v. Portley,* 857 P.2d 459 (Colo.App.1992).

■ Second, if the defendant satisfies the first part of the test, then the burden shifts to the prosecution to state a race-neutral explanation for the challenge. *Batson v. Kentucky, supra.* At this point, the prosecution's reasons need not be persuasive or even plausible, *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), and the trial court must accept the proffered reasons as true. *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Only if the prosecutor's discriminatory intent is inherent in the explanation will it not be deemed race-neutral. *Purkett v. Elem, supra.* The defendant must be given an opportunity to rebut the prosecutor's explanation. *Batson v. Kentucky, supra.*

■ Third, once the prosecution articulates a race-neutral explanation, the trial court must decide whether the defendant has proved purposeful racial discrimination. *Batson v. Kentucky, supra; People v. Cerrone, supra.* At this point the plausibility of the prosecutor's race-neutral explanation becomes relevant, such that incredible explanations "may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett v. Elem, supra,* 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839.

After the prosecution used two of its five peremptory challenges to excuse white jurors, it accepted the jury as then constituted which was entirely white. The defense then continued exercising its peremptory challenges which resulted in two African–Americans joining the panel. Defendant, who is white, objected to the prosecution's peremptory challenges as to the two African–American jurors.

The two African–American jurors were questioned briefly by the court and defense counsel. The prosecutor, without questioning either juror, then used two of his remaining peremptories to challenge them both.

Defendant's objections to the prosecution's peremptory challenges were heard at unreported bench conferences that were reconstructed in summarized form by the trial court after the jury was impaneled. From those reconstructed summaries, it would appear that when defense counsel objected to each challenge, in turn, the trial court, with-

out ruling that defendant had made the requisite prima facie showing that the challenge was based on race, inquired of the prosecutor the reason for each challenge.

As to the first prospective juror, the prosecutor replied that he feared that, because the prospective juror frequently watched Court TV, he would hold the prosecutor to a higher standard of proof. Defense counsel, who had inquired of the juror, responded that the juror had stated "specifically that he did not feel his viewing Court TV would affect his ability to judge the evidence impartially." The trial court then found that there was "a rational reason for excusing [prospective juror] beyond his racial status," and permitted the challenge.

As to the second prospective juror, the prosecutor replied that he was concerned that she would be distracted by work responsibilities and that she might be biased against police because her friend had been arrested. The trial court found that "there was again a rational reason for excusing the juror other than racial reasons. . . . "

■ With respect to the first step in the *Batson* analysis, we note that the trial court made no express finding that defendant had made a prima facie showing of discrimination with respect to either juror. The fact, however, that the trial court proceeded through the remaining steps of the *Batson* analysis and ruled on the ultimate issue renders moot any question as to the prima facie showing of discrimination. *Hernandez v. New York, supra.*

■ With respect to the second step in the *Batson* test, whether the prosecutor's explanations for excusing the potential jurors were race-neutral, our review is *de novo. United States v. Kunzman,* 54 F.3d 1522 (10th Cir. 1995); *People v. Marion,* 941 P.2d 287 (Colo. App.1996).

■ After taking into account the fact that, at this stage, the prosecution's reasons need not be persuasive or even plausible and we must accept the proffered reasons as true, we conclude, as did the trial court, that the explanations offered by the prosecutor were race-neutral.

■ As to the third step of the *Batson* test, we defer to the trial court's factual finding as to whether the defendant proved intentional discrimination, *see People v. Cerrone, supra,* and we review the trial court's ruling in that regard for clear error. *See United States v. Kunzman, supra.*

■ Our review of the third step of the *Batson* analysis, in this instance, is considerably more troubling. The record reveals that the prosecutor did not question either prospective juror *at all* during voir dire, which raises the inference of purposeful discrimination. *Colbert v. State,* 304 Ark. 250, 801 S.W.2d 643 (1990); *State v. Slappy,* 522 So.2d 18 (Fla.1988); *State v. Aragon,* 109 N.M. 197, 784 P.2d 16 (1989); *Guthrie v. State,* 598 So.2d 1013 (Ala.Crim.App.1991); *see also Fields v. People,* 732 P.2d 1145 (Colo.1987) (fact that prosecutor did question challenged jurors during voir dire evidence of no discrimination).

■ Besides not questioning the second prospective juror regarding any bias against the police, the prosecutor did not challenge white jurors who had related similar experiences which might give rise to a possible bias against the police. The prosecutor did not challenge a white juror whose son had been arrested by police officers and convicted of a crime or a white juror who had been in jail himself. A prosecutor's disparate treatment of prospective jurors who, but for their race, have similar and allegedly objectionable experiences, is pretextual. *See Walton v. Caspari,* 916 F.2d 1352 (8th Cir.1990); *Gadson v. State,* 561 So.2d 1316 (Fla.Dist.Ct.App.1990); *People v. Kindelan,* 213 Ill.App.3d 548, 157 Ill.Dec. 674, 572 N.E.2d 1138 (1991).

■ Moreover, defendant was apprehended by store security guards and, while a police officer served as advisory witness to the prosecution, no police officer testified at trial. Therefore, any bias against police upon which the prosecutor relied for challenging the second African–American juror bore little or no relationship to the case. For the announced reason for challenging a prospective juror for bias to be credible, the bias must relate to the facts or circumstances of the case which will be tried before, and ulti-

mately submitted to, the jury. *State v. Walker*, 154 Wis.2d 158, 453 N.W.2d 127 (1990); *State v. Slappy, supra.*

 Taken together, these factors indicate to us a high probability that the prosecutor challenged the two prospective jurors because of their race. Despite the fact that our review is limited to clear error, and the third step in the *Batson* test is a pure issue of fact, we conclude that peremptory challenge by the prosecutor of the two African–American jurors constituted purposeful discrimination against a cognizable group and a denial of equal protection, and the trial court's conclusion to the contrary was clearly erroneous.

Having reached this conclusion, we need not address the remaining issues raised by defendant on appeal as they are unlikely to recur on retrial.

The judgment of conviction is reversed and the cause is remanded to the trial court for a new trial.

STERNBERG, C.J., and NEY, J., concur.