# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2168

_____

T.B., a minor, by and through his    *
Parents and Legal Guardians;    *
W.B.; J.B.,    *
   *   Appeal from the United States
        Plaintiffs - Appellants,    *   District Court for the
   *   Western District of Missouri.
    v.    *
   *   [PUBLISHED]
St. Joseph School District,    *
   *
       Defendant - Appellee.    *

_____

Submitted: February 15, 2012
Filed: April 27, 2012

_____

Before LOKEN, BYE, and MELLOY, Circuit Judges.

_____

PER CURIAM.

T.B.'s parents, on behalf of their disabled child, appeal the district court's[1] finding the St. Joseph School District did not violate the Individuals with Disabilities Education Act by failing to provide a free appropriate public education to T.B., making the parents ineligible for reimbursement for the costs of T.B.'s home-based program. We affirm.

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

I

T.B. is an autistic child. In 1997, T.B. began receiving educational services from the St. Joseph School District (School District). In June 2006, unable to reach an agreement on an extended school year program for the summer, the parents informed the School District of their decision to withdraw T.B. from school and enroll him in a home-based program. T.B. did not return to school in the fall of 2006. In September 2006, the School District sent the parents a letter stating it was the School District's understanding T.B. was not enrolled for the 2006-2007 school year. The School District further informed the parents it was prepared and ready to provide services to T.B.

On November 17, 2006, following discussions for the development of a new Individualized Education Program (IEP)[2], the parents submitted T.B.'s enrollment forms to the School District. The new IEP was finalized on December 4, 2006, and was to take effect upon T.B.'s re-enrollment in the School District on December 15, 2006. T.B., however, did not return to school and after ten consecutive days of non-attendance, the School District dropped him from its rolls in accordance with Missouri law.

On March 28, 2007, the parents filed a due process complaint (Complaint I), challenging the adequacy of the School District's proposed extended school year program for summer 2006 and the proposed IEP for the 2006-2007 school year. The parties subsequently engaged in informal settlement negotiations, ultimately entering into a written Release and Settlement Agreement concerning the resolution of Complaint I.

_____

[2]"The term 'individualized education program' or 'IEP' means a written statement for each child with a disability that is developed, reviewed, and revised in accordance withe section 1414(d) of [the Individuals with Disabilities Education Act]." 20 U.S.C. § 1401(14).

In June 2009, however, while proceedings over Complaint I were still pending, the parents filed a second due process complaint (Complaint II) for the period November 1, 2007 to June 1, 2009. In Complaint II, the parents asserted the School District had failed to provide free appropriate public education (FAPE) within the meaning of the Individuals with Disabilities Education Act (IDEA) because the School District did not conduct a three-year re-evaluation of T.B. by January 24, 2008,[3] and did not inform the parents of its intent not to do so. The parents further asserted the School District failed to develop annual IEPs for T.B. after November 1, 2007. The parents therefore sought reimbursement for the costs of placing T.B. in a home-based program.

After a hearing, a three-member administrative panel empowered by the Missouri State Board of Education found the School District violated the IDEA by failing to conduct a triennial re-evaluation of T.B., as required by 20 U.S.C. § 1414(a)(2), and by failing to inform the parents in writing of its intent not to conduct such evaluation. The administrative panel found no IDEA violation regarding the annual IEPs, explaining the School District had no continuing duty to develop or review IEPs for T.B. following his unilateral withdrawal from school. The administrative panel denied the parents' request for reimbursement on the ground T.B.'s home-based program was "woefully inadequate" and the parents had failed to prove they actually paid for the costs associated with it. Specifically, the administrative panel found the home-based program failed to meet T.B.'s academic and social needs, and therefore was not "proper" within the meaning of the IDEA, because, among other things: (1) the program did not offer any education-related services such as speech, physical, or occupational therapy; (2) "there was no set schedule" and the program hours were limited; and (3) "an academic component was glaringly absent" as demonstrated by the lack of any record indicating T.B.'s current cognitive skills, his grade level, or his reading and math levels. Hr'g Panel Findings

---

[3]The School District last conducted a formal evaluation of T.B. on January 24, 2005.

of Fact, Conclusion of Law, Decision & Order, April 1, 2010, at 29. Accordingly, the administrative panel concluded T.B.'s home-based program provided primarily personal assistance services intended to assist T.B. with his daily living skills.

The parents subsequently filed suit in district court, claiming the administrative panel erred in finding the School District had no ongoing obligation to develop annual IEPs for T.B. once he was in the home-based program and in denying their request for reimbursement. After conducting an independent review, the district court held the School District had no duty to review or develop annual IEPs for T.B. because the parents unilaterally chose to withdraw T.B. from school in 2006. Because no such duty existed, the district court concluded the School District did not violate the IDEA by failing to offer a FAPE to T.B. and denied the parents' request for reimbursement. The district court additionally determined the parents were not entitled to reimbursement because they failed to show what expenses for the home-based program, if any, they had actually incurred. The parents appeal.

II

On appeal, the parents argue the district court erred in determining the School District did not violate the IDEA by failing to offer a FAPE to T.B. and in denying their request for reimbursement. We review the district court's ultimate determination under the IDEA de novo. C.B. ex rel. B.B. v. Special Sch. Dist. No. 1, Minneapolis, Minn., 636 F.3d 981, 988 (8th Cir. 2011).

The Supreme Court first addressed the issue of reimbursement for the cost of privately educating a child with disabilities in School Committee of Town of Burlington, Massachusetts v. Department of Education, Massachusetts, 471 U.S. 359 (1985). In Burlington, the Supreme Court considered whether the IDEA authorizes reimbursement for the costs of private education when the parents unilaterally place their child in private school based on the public school's alleged failure to develop an adequate IEP and provide a FAPE. See id. at 369. The Court held that while "parents

who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk," they may later seek reimbursement for the costs associated with the alternative placement. Id. at 373-74. The Court concluded the IDEA grants a federal court "the power to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the [IDEA]." Id. at 369. In other words, parents seeking reimbursement for the cost of private education could succeed "*only* if a federal court concludes both that the public placement violated [the] IDEA and that the private school placement was proper under the [IDEA]." Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter, 510 U.S. 7, 15 (1993); see also C.B., 636 F.3d at 988 (stating "parents of a child with a disability who previously received special education and related services must meet the twin requirements of Burlington to obtain reimbursement for expenditures on private special education").

The parents' reimbursement claim in this case is not a typical IDEA claim in that it does not seek reimbursement on the ground the School District failed to develop an adequate IEP or failed to provide an IEP at all. Rather, the parents assert the School District did not offer a FAPE because it failed to develop annual IEPs for T.B. *after* T.B. was unilaterally placed in a home-based program. To qualify for reimbursement, however, the parents must show: (1) T.B.'s placement in the School District violated the IDEA *before* the parents unilaterally chose to place him in a home-based program; and (2) the home-based program was proper under the IDEA. See Carter, 510 U.S. at 15. Given the parents' decision to ultimately settle the issue of the adequacy of the proposed IEP, we question whether they could claim, much less successfully show, the School District failed to provide a FAPE to T.B. Nonetheless, assuming *arguendo* they could indeed establish an IDEA violation, the parents are still not entitled to reimbursement as they cannot show the home-based program is "proper" under the IDEA.

To show an alternative placement is "proper" within the meaning of the IDEA, parents need not show the placement meets state education standards. See id., 510 U.S. at 14. Thus, an alternative placement need not provide certified special education teachers, offer an IEP for the disabled child, see id., or satisfy the least-restrictive environment requirement, see C.B., 636 F.3d at 991. In fact, to be "proper" under the IDEA, the placement need only be "reasonably calculated to enable the child to receive educational benefits." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 207 (1982); see also Carter, 510 U.S at 11; 20 U.S.C. § 1401(29) (defining "special education" as "specially designed instruction . . . to meet the unique needs of a child with disability"). Accordingly, to qualify for reimbursement under the IDEA, parents need only demonstrate the alternative placement provides "educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." Rowley, 458 U.S. at 188-89 (internal quotation marks and citation omitted). Applying this standard, we agree with the administrative panel T.B.'s home-based program is not "proper" within the meaning of the IDEA.

The record shows T.B.'s home-based program was funded by the Missouri Department of Mental Health (DMH) through the so-called "Lopez" waiver. Services provided through a Lopez waiver include personal assistance, day habilitation, transportation, environmental accessibility adaptation, respite care, and behavior therapy. See Hr'g Tr., Nov. 9, 2009, at 137, 139 (testimony of Brenda Smith, service coordinator supervisor). The personal assistance services generally focus on "daily living things," such as keeping a clean home, brushing one's teeth, choosing one's clothing for the day, budgeting money, and so on. Id. at 139. Consistent with the services provided through the waiver, the record further shows T.B. engaged in the following types of activities for the duration of his home-based program: daily living, community access, money management, protective oversight, and exercise. See Appellee's App. at 391-417 (providing copies of T.B.'s daily activity log sheets). For example, T.B. worked on answering social questions like "What's your address?",

"What's your phone number?", and "What's your name?" He also worked on developing basic social skills by learning how to make eye contact, respond to questions in simple conversations, wait in line at the store, order from a menu, and play games with others. The program further focused on teaching T.B. the proper sequence for certain household and daily activities, such as doing laundry, making popcorn, or brushing his teeth.

To be sure, the record does indicate the program provided some educational services, including math, reading, and listening comprehension. These educational services, however, were often secondary to the teaching of social and behavior skills. Math, for example, was included as part of learning how to wait in line and place an order or as part of the money management lessons. Spelling and vocabulary expansion were done on the way to a social activity. Thus, while the home-based program may have offered some activities to help supplement T.B.'s educational needs, these activities were in no way intended to supplant the educational services available to him through the School District. In fact, the Lopez waiver specifically provides that the services available through the program "may not duplicate or replace special education-related services, which otherwise are available to the child through a state and local agency." Hr'g Tr., Nov. 9, 2009, at 141.

Based on the record before us, we cannot say T.B.'s home-based program was "reasonably calculated to enable [him] to receive educational benefits." Rowley, 458 U.S. at 207. The program is therefore not "proper" within the meaning of the IDEA and the parents are not entitled to reimbursement for the costs associated with it.

III

Accordingly, we affirm the judgment of the district court. See United States v. Garreau, 658 F.3d 854, 857 (8th Cir. 2011) (stating "[w]e may affirm a district court's judgment on any basis supported by the record").

_____