2014 COA 143

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Heather BEAUVAIS, Defendant– Appellant.**

**Court of Appeals No. 13CA0665**

Colorado Court of Appeals, Div. VI.

Announced October 23, 2014

John W. Suthers, Attorney General, Kevin E. McReynolds, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Firm of Michelle Lazar, Michelle L. Lazar, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE FOX

¶ 1 Defendant Heather Beauvais appeals the judgment of conviction entered on a jury verdict finding her guilty of stalking. We remand the case to the trial court with directions that it make additional findings concerning Beauvais's challenge under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

## I. Background

¶ 2 Beauvais was charged with extortion and three counts of stalking after she repeatedly called, emailed, and sent text messages to a man she had met on the Internet. The jury found Beauvais guilty of one count of stalking under section 18-3-602(1)(c), C.R.S. 2014. Beauvais now contends that the trial court committed reversible error in the jury selection process. She also contends that section 18-3-602(1)(c) is unconstitutional.

## II. *Batson* Challenge

¶ 3 Beauvais first contends that the trial court clearly erred by failing to sustain her *Batson* challenge to the prosecution's use of peremptory challenges to excuse potential jurors on account of their gender. We conclude that the record is insufficient to all us to determine whether the trial court's ruling was clearly erroneous, and therefore remand the matter to the trial court for additional findings.

### A. Applicable Law and Standard of Review

¶ 4 *Batson* reaffirmed that purposeful racial discrimination in jury selection violates a defendant's rights under the Equal Protection Clause of the Fourteenth Amendment. 476 U.S. at 85-87, 106 S.Ct. 1712; *see Fields v. People,* 732 P.2d 1145, 1155 (Colo.1987) (applying *Batson*). The Equal Protection Clause also prohibits gender discrimination in jury selection. *See J.E.B. v. Alabama,* 511 U.S. 127, 131, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (applying *Batson* to prohibit gender discrimination in jury selection); *People v. Gandy,* 878 P.2d 68, 70 (Colo.App.1994) (applying *J.E.B.*).

¶ 5 Accordingly, the prosecution may not use peremptory challenges to "purposefully discriminate" against potential jurors due to either race or gender. *See People v. Collins,* 187 P.3d 1178, 1181 (Colo.App. 2008). Where a criminal defendant claims the prosecution used its peremptory challenges to excuse potential jurors on the basis of gender, the defendant bears the burden of showing purposeful discrimination. *Cf. Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) ("[T]he ultimate burden of persuasion regarding racial motivation [for exercising peremptory challenges] rests with, and never shifts from, the opponent of the strike.").

¶ 6 Courts evaluate claims of discriminatory jury selection using the three-step analysis set forth in *Batson:*

(1) First, the defendant must make a prima facie showing that the state used its peremptory challenges to exclude potential jurors due to their gender. *See* 476 U.S. at 93-97, 106 S.Ct. 1712.

(2) Next, if the defendant makes that showing, the burden shifts to the prosecution to articulate a gender-neutral reason for excluding the jurors in question. *Id.* at 97, 106 S.Ct. 1712.

(3) Finally, if the state can articulate a gender-neutral explanation for its challenges, then the trial court must give the defense an opportunity to challenge that explanation, before determining whether the defendant has carried her burden of proving purposeful discrimination.

*People v. Saiz,* 923 P.2d 197, 206 (Colo.App. 1995); *see also People v. Cerrone,* 854 P.2d 178, 185 (Colo.1993).

¶ 7 Beauvais challenges the trial court's determination at the third *Batson* step. At step three, the trial court must review all the evidence to decide "whether the opponent of the strike has shown, by a preponderance of evidence, that the proponent of the strike sought to exclude a potential juror because of a discriminatory reason." *Collins,* 187 P.3d at 1182. "The decisive question" at this step is whether counsel's gender-neutral explanation for a

peremptory challenge "should be believed." *Id.*; *see also Snyder v. Louisiana,* 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). In answering that question, the court may consider, among other factors, "the proponent's demeanor, how reasonable or improbable the proponent's explanations are, and whether the proffered rationale has some basis in accepted trial strategy." *Collins,* 187 P.3d at 1182. The trial court is in a far better position than a reviewing court to make such credibility determinations. *Id.* Therefore, "we defer to the trial court's factual finding as to whether the defendant proved intentional discrimination, and we review the trial court's ruling in that regard for clear error." *People v. Gabler,* 958 P.2d 505, 508 (Colo.App.1997) (citation omitted).

### B. Analysis

■ ¶ 8 At the conclusion of voir dire, the prosecutor used five of the six allotted peremptory challenges to excuse females from the panel of potential jurors.[1] Defense counsel used all six peremptory challenges to dismiss male potential jurors from the panel. The final jury consisted of nine male jurors; three female jurors; and one alternate juror, a female. Defense counsel raised a *Batson* objection, and the trial court determined that the defense had established a prima facie case of discriminatory jury selection. The prosecutor initially expressed surprise that *Batson* prohibited gender discrimination in jury selection, saying, "I [have] only heard [*Batson*] argued in terms of race neutral causes for peremptory challenges. So I've never heard it in terms of gender." The prosecutor then gave the following gender-neutral explanations for the challenges:

Juror No. 1, [S.B.], looked disinterested during the questioning. She offered no— she never raised her hand for any issue. Never nodded when another juror spoke and oftentimes was looking away from me during my questioning looking at her watch. She appeared to me to be young and had no kids.

Juror No. 4, [L.G.], during the period when we were waiting for the remainder of the jurors to come back she was in the back of the courtroom and she was coughing heavily. I don't know if she was sick. She never indicated on the record that she was sick. But that was the impression I got. Her husband is in the legal field. She has two daughters. One of which she said was stalked. I think it is inappropriate to have someone whose family member so closely alleged to have been a victim of the same crime that we're charging here. Juror No. 6, [K.G.] is in college. Is currently attending college. Has no kids. Appeared to be young. And it sounds as though she had a relationship with a large amount of law enforcement officers from [her] community....

Juror No. 10, [A.B.], is also in college. Appeared to me to be young. Does not have any kids and did not expand on any of her comments when asked specifically about what we had spoken with prior to her getting on the panel. She seemed dead pan to me and gave no detailed explanations of why she was saying yes and no. Juror No. 23, [J.T.], also currently in college. Attending classes. She also appeared young. Appeared disinterested. Did not volunteer any answers to my questions, although I tried to make eye contact with her to engage her in conversation. She never raised her hand or volunteered any information.

¶ 9 The court took a brief recess to consider the issue, and then denied the *Batson* challenge. Because there is insufficient information in the record to determine whether the court's ruling was clearly erroneous, we must remand the matter to the trial court.

¶ 10 The record reveals that the prosecutor used two peremptory challenges to excuse women, S.B. and J.T., whom it had failed to question during voir dire. In *Gabler,* a division of this court explained that a prosecutor's failure to question potential jurors of a

---

1. The prosecutor accepted the panel as constituted after exercising the fourth peremptory challenge, and again after the defense's fifth peremptory challenge. When the defense used its sixth and final peremptory challenge to dismiss a male juror, a female juror was called into the jury box to replace the dismissed juror. The prosecutor then used a fifth peremptory challenge to dismiss the replacement juror.

protected class before excusing them "raises the inference of purposeful discrimination." 958 P.2d at 508.

¶ 11 Moreover, here, the prosecutor's questions to the other challenged prospective jurors revealed little, if anything, that would form the basis for a peremptory challenge under "accepted trial strategy." *See Collins,* 187 P.3d at 1182. A.B., L.G., and K.G. all stated that they would listen to the evidence presented at trial and render a verdict based on that evidence and the court's instructions. Nevertheless, the prosecutor excused all three women for reasons that seem largely unrelated to the issues in the case. We acknowledge that, in explaining its peremptory challenges after a *Batson* objection, the prosecution need not provide an explanation that would justify a challenge for cause. *See Cerrone,* 854 P.2d at 189. But "implausible or fantastic justifications" for a peremptory strike are generally not sufficient to overcome an inference of purposeful discrimination. *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769.

¶ 12 Some of the reasons the prosecutor offered for excusing female potential jurors—that they were young, had no children, failed to volunteer answers to questions posed to the panel, had connections to law enforcement officers, and had personally witnessed or experienced stalking—applied equally to many male potential jurors in the venire:

- Juror L.C. stated that he had been stalked;
- Juror M.K. said that his uncle had been a stalking victim;
- Juror K.N. was young and had no children;
- Juror J.S. was young and childless;
- Juror J.G. had friends in law enforcement.

Yet, the prosecutor did not challenge any of the above male potential jurors.[2] "A prosecutor's disparate treatment of prospective jurors who, but for their race [or gender], have similar and allegedly objectionable experiences, is pretextual." *Gabler,* 958 P.2d at 508. Thus, this prosecutor's different treatment of jurors whose only notable difference was gender suggests that the prosecutor used peremptory challenges to discriminate based on gender.

¶ 13 Significantly, several male jurors who seemed to express bias against the prosecution were kept on the panel, while female jurors who stated they could be fair and impartial were excused. For example, one male juror, K.N., remained on the panel even after revealing that he had recently spent eighty-five days in jail. When asked about his experience, K.N. said that he felt he had been treated unfairly by a Denver police officer, and that he was "tender, when it comes to sentencing"—powerful evidence that he might harbor anti-prosecution bias. J.S., another male juror, also referenced a bad experience with law enforcement, but the prosecutor exercised four peremptory challenges before the defense finally struck J.S. from the panel. And, perhaps most notably, after the trial court denied the prosecution's for-cause challenge to R.S., a male potential juror who had expressed bias against the prosecution,[3] the prosecutor did not use a peremptory challenge to excuse R.S. The juror remained on the panel and ultimately deliberated with the rest of the jury. While peremptory challenges may sometimes be exercised based on guesses, hunches, and gut feelings about how certain potential jurors might decide a case, that the prosecutor was willing to have these three men serve on the jury—instead of women who, during voir dire, evinced a greater affinity for the prosecution—suggests that the prosecutor used peremptory challenges to excuse potential jurors based on their gender.

---

**2.** The defense dismissed males L.C., M.K., and J.S. before the prosecutor accepted the panel as constituted. K.N. and J.G., both males, ultimately served on the jury.

**3.** R.S. said that he had been treated unfairly by a police officer, and confessed that his experience might affect his judgment in deciding the case. Though the court never expressly stated that it denied the challenge for cause, it did not dismiss the juror from the panel, and the prosecutor never requested an express ruling on the for-cause challenge.

¶ 14 Furthermore, the prosecutor's stated reasons for excusing the female potential jurors were inconsistent. The prosecutor claimed that he dismissed S.B., K.G., and A.B., in part, because they had no children. But later, when explaining why L.G. was dismissed, the prosecutor stated, "[s]he has two daughters." The prosecutor then added that one of L.G.'s daughters had been stalked, and said, "it is inappropriate to have someone [on the jury] whose family member [is] alleged to have been a victim of the same crime we're charging here." It was defense counsel, however, who excused the two male potential jurors who had personal experiences related to stalking.

¶ 15 The prosecutor's decision to waive the last peremptory challenge also suggests discriminatory intent, because, had he exercised that challenge, the next juror to be seated on the panel would have been a woman. Recently, in *People v. Lucero*, 2014 COA 53, 353 P.3d 874, a division of this court held that the "inaction" of waiving a peremptory challenge, the exercise of which would have brought to the panel a juror of a particular race or gender, supports an inference of discriminatory intent when other evidence shows that the prosecutor may have discriminated against that particular race or gender. *Id.* at ¶ 33.

¶ 16 In *Snyder*, a prosecutor used a peremptory strike in a capital murder case to excuse an African–American prospective juror who had survived a challenge for cause. 552 U.S. at 477, 128 S.Ct. 1203. When the defense objected on *Batson* grounds, the prosecutor offered two race-neutral reasons for excusing the potential juror: (1) he looked nervous during questioning; and (2) he was a student teacher, so he might find the defendant guilty of a lesser offense to avoid the death penalty phase of the trial and miss fewer classes. *Id.* at 478–79, 128 S.Ct. 1203. The second explanation was refuted by the record: the trial court contacted the potential juror's supervisor, who explained that the potential juror would be excused from class for a week for his jury service. *Id.* at 481, 128 S.Ct. 1203. After learning of that conversation, the potential juror expressed no further concern about serving on

the jury. *Id.* Thus, the Court inferred that the prosecutor's second reason was pretextual. Because the trial court made no findings regarding the first reason—the prospective juror's alleged nervous demeanor—the Court refused to presume that the judge had credited the first reason. *Id.* at 485, 128 S.Ct. 1203. Therefore, "the Court concluded that the adverse inference created by the use of the pretextual reason was not overcome by the first reason," and it reversed the defendant's conviction. *Collins*, 187 P.3d at 1183 (discussing *Snyder*).

¶ 17 A division of this court adopted *Snyder*'s reasoning in *Collins*, 187 P.3d 1178. In *Collins*, the prosecutor articulated five race-neutral reasons for excusing an African-American prospective juror with a peremptory challenge: (1) she did not respond to questions; (2) she had her arms crossed during voir dire; (3) she did not reveal that her husband had once been accused of a crime; (4) she had slept through part of voir dire; and (5) she was a nurse. *Id.* at 1180. Three of those reasons were refuted by the record: the juror responded to every question the prosecutor posed to her; the prosecutor never asked the prospective jurors whether they had relatives who had been accused of a crime; and the prospective juror was a program assistant at a hospital, not a nurse. *Id.* at 1183. Thus, the *Collins* division concluded that the prosecutor's reasons were pretextual. *Id.* Because the trial court did not make findings crediting the remaining reasons—which focused on the juror's body language and demeanor—the division held that it could not presume the trial court found them to be credible. *Id.* Therefore, the division determined that the trial court clearly erred by denying the defendant's *Batson* challenge. *Id.* at 1184.

¶ 18 Here, as in *Snyder* and *Collins*, the record refutes several of the prosecutor's explanations for excusing potential jurors. The record contradicts the prosecutor's claims that he dismissed female potential jurors because they had no children, failed to volunteer answers to questions posed to the panel, had connections to law enforcement officers, and had personally witnessed or experienced stalking: several males on the

panel had those same characteristics, and the prosecutor did not even attempt to excuse them. Thus, following the holdings of *Snyder*, 552 U.S. at 485, 128 S.Ct. 1203, and *Collins*, 187 P.3d at 1183, we can infer that the prosecutor's stated reasons for dismissing the challenged jurors were pretextual. And, as in *Snyder* and *Collins*, the trial court did not specifically credit the prosecutor's demeanor-based reasons for dismissing the female potential jurors, and thus we cannot presume the trial court found them to be credible. *See also United States v. McAllister*, 693 F.3d 572, 581 (6th Cir.2012) (concluding that the trial court did not conduct a constitutionally sufficient *Batson* analysis where it did not explicitly analyze the prosecutor's credibility vis-à-vis the proffered explanations for dismissing a prospective juror—the trial court's truncated analysis essentially combined *Batson* steps two and three).

¶ 19 Unlike in *Snyder* and *Collins*, however, not all of the prosecutor's remaining justifications for excusing potential jurors were based on demeanor or body language. The prosecutor claimed that each of the potential jurors he had excused was either young, sick, or a college student. These justifications are objectively verifiable and could potentially form the basis of a legitimate peremptory challenge. But the trial court made no findings regarding the potential jurors' ages or health, and there is nothing in the record to show whether the trial court believed that the prosecutor sought to excuse any of them because they were college students. Therefore, we cannot determine whether the trial court conducted a complete *Batson* analysis. Accordingly, we must remand the case for additional proceedings.

¶ 20 On remand, the trial court should conduct the third step of the *Batson* analysis. It should make specific findings crediting or discrediting the prosecutor's justifications for excusing female potential jurors because they were young, sick, or students. If the court finds these gender-neutral justifications to be credible, the conviction shall stand affirmed. If the court determines that the prosecutor's stated justifications for excusing any of the

female potential jurors should not be believed, it should vacate the judgment of conviction and grant Beauvais a new trial.

## III. Constitutionality of Stalking Statute

¶ 21 Beauvais next challenges the constitutional validity of section 18–3–602(1)(c). She argues that the subsection is unconstitutional on its face and as applied to the facts of this case.

¶ 22 The parties disagree as to whether this issue was preserved for appellate review. Because the issue is likely to arise on remand, we exercise our discretion to address Beauvais's facial challenge in the interest of judicial economy, regardless of whether the issue was preserved. *See People v. Houser*, 2013 COA 11 ¶ 35, 337 P.3d 1238 ("[W]e conclude that this court may, as a matter of discretion, take up an unpreserved challenge to the constitutionality of a statute, but only where doing so would clearly further judicial economy."). We conclude that the statute is constitutionally valid on its face. However, because Beauvais's as-applied challenge requires a fact-intensive analysis which is more properly the province of the trial court, we decline to address it here.

### A. Standard of Review

¶ 23 We review the constitutionality of a statute de novo. *Hinojos–Mendoza v. People*, 169 P.3d 662, 668 (Colo.2007). Statutes are presumed to be constitutional. *People v. Hickman*, 988 P.2d 628, 634 (Colo. 1999). The party challenging a statute's validity "has the burden of proving unconstitutionality beyond a reasonable doubt." *People v. Janousek*, 871 P.2d 1189, 1195 (Colo.1994).

### B. Analysis

¶ 24 Beauvais argues that section 18–3–602(1)(c), the stalking statute, is, on its face, unconstitutionally vague and overbroad. The Colorado Supreme Court and another division of this court have both concluded that a prior substantially identical version of this statute was neither unconstitutionally vague nor overbroad. *See People v. Cross*, 127 P.3d 71, 78 (Colo.2006); *People v. Richardson*, 181

P.3d 340, 343–45 (Colo.App.2007).[4] We adopt the reasoning of Cross and Richardson, and therefore reject Beauvais's facial challenge to section 18–3–602(1)(c).

## IV. Conclusion

¶ 25 The case is remanded for further proceedings consistent with this opinion.

JUDGE ASHBY concurs.

JUDGE BERNARD concurs in part, specially concurs in part, and dissents in part.

JUDGE BERNARD, concurring in part, specially concurring in part, and dissenting in part.

¶ 26 I disagree with the majority's conclusion that the trial court may have clearly erred when it denied defendant's Batson challenge, and, as a result, that we should remand this case for further factual findings. I therefore respectfully dissent from that part of the majority's opinion.

¶ 27 I also disagree with the majority's decision to address defendant's unpreserved facial constitutional challenge to the stalking statute. I therefore respectfully specially concur with that part of the majority's opinion.

¶ 28 Last, I concur with the part of the majority opinion that declines to review defendant's unpreserved as-applied constitutional challenge to the stalking statute.

## I. Batson

### A. The Second Step

¶ 29 A prosecutor's gender-neutral reasons for a peremptory challenge may "often invoke a juror's demeanor (e.g., nervousness, inattention)." See Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). When such reasons are given, a trial court is required to evaluate the prosecutor's demeanor and credibility in light of the court's observations of the juror's demeanor and credibility. Id.

¶ 30 In explaining his peremptory challenges, the prosecutor in this case provided gender-neutral reasons for them. For example, he stated that certain female jurors were not interested in the proceedings; one may have been sick because she was coughing; several were in college; they seemed young.

¶ 31 These reasons are not necessarily insightful or logically connected to the job that a juror has to do. But they do not have to be insightful or logical as long as they are not indicative of purposeful gender discrimination. See Valdez v. People, 966 P.2d 587, 590 (Colo.1998) (noting that race-neutral reasons do not have to be "persuasive or even plausible").

¶ 32 It is unsettling that a prosecutor who was experienced enough to be trying felony cases did not realize that Batson includes gender within its scope. This has been settled law for twenty years. See J.E.B. v. Alabama, 511 U.S. 127, 128–29, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). But a prosecutor's ignorance of the law does not automatically equate to gender bias. Indeed, the exercise of a challenge for cause may be based on "mistake, ignorance, or idiosyncracy[,]" as long it is gender neutral. See Jones v. State, 249 Ga.App. 327, 548 S.E.2d 75, 76 (2001).

### B. The Third Step

¶ 33 In applying the third step of Batson, the trial court was required to answer one question: Did defendant establish, by a preponderance of the evidence, that the prosecutor exercised a peremptory challenge to remove one or more potential jurors because of her sex? See Valdez, 966 P.2d at 590.

¶ 34 Because this third step requires us to consider a trial court's factual findings, we accord those findings due deference, and we review them for clear error. Id. This means that those findings bind us if the record supports them. People in the Interest of J.C.S., 169 P.3d 240, 243 (Colo.App.2007); People v. Trujillo, 15 P.3d 1104, 1108 (Colo. App.2000), disagreed with on other grounds

---

4. The prior version of the statute, former section 18–9–111(4)(b)(III), was moved, without substantive alteration, in 2010. See Ch. 88, sec. 1, § 18–3–602(1)(c), 2010 Colo. Sess. Laws 294.

by *Craig v. Carlson*, 161 P.3d 648, 656 n. 3 (Colo.2007).

¶ 35 Giving deference to the trial court on the issue of a prosecutor's discriminatory intent "makes particular sense in this context because . . . the finding 'largely will turn on an evaluation of credibility.'" *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion) (quoting *Batson v. Kentucky*, 476 U.S. 79, 98 n. 21, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). As an appellate court, we are not "as well positioned as the trial court to make such credibility determinations," so we defer to the trial court's findings unless there are "exceptional circumstances." *People v. Robinson*, 187 P.3d 1166, 1173–74 (Colo.App. 2008).

¶ 36 The ultimate and "decisive" third-step question is whether the prosecutor's gender-neutral "explanation for [the peremptory challenges] should be believed." *See Hernandez*, 500 U.S. at 365, 111 S.Ct. 1859. "There will seldom be much evidence" on this issue, and the "best evidence often will be the demeanor of the attorney who exercises the challenge[s]." *Id.* The "evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Id.* (quoting in part *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)).

¶ 37 It is obvious that the trial court took this issue seriously. At one point, while making its findings, the court observed that "if either side were systematically or intentionally or purposefully attempting to discriminate against jurors because of . . . gender[,]" such conduct would be "unacceptable in this courtroom."

¶ 38 The court recognized that it was required to "look at . . . factors which can be subtle." And the court observed that, although a series of peremptory challenges used to strike prospective female jurors "can be" made for a discriminatory purpose, it may not "necessarily" be made for such a purpose.

¶ 39 The court then correctly placed the burden of proof on defendant to show purposeful discrimination. *See Valdez*, 966 P.2d

at 590. And, although the court had "concerns," it nonetheless found that defendant had "not established [that] there was purposeful discrimination."

¶ 40 The trial court could have made more precise findings and explained how it viewed the jurors' and the prosecutor's credibility and demeanor. *See Snyder*, 552 U.S. at 477, 128 S.Ct. 1203; *Hernandez*, 500 U.S. at 365, 111 S.Ct. 1859. But it is my view that the court was clear enough in this regard because it found that defendant had not satisfied her burden of proof. *See People v. Phillips*, 2012 COA 176, ¶ 168, 315 P.3d 136 ("[T]he trial court fulfilled the requirements of the law, although it did not rule explicitly on whether the prosecutor's explanations were believable."); *People v. O'Shaughnessy*, 275 P.3d 687, 691 (Colo.App.2010) (rejecting the defendant's argument that "the trial court was required to rule explicitly on whether the race-neutral reasons given for the strikes were believable"), *aff'd*, 2012 CO 9, 269 P.3d 1233; *Robinson*, 187 P.3d at 1174 ("The district court obviously (albeit implicitly) found the prosecutor's stated reasons credible, and we cannot say on this record that the court clearly erred in doing so."); *see also Miller–El v. Cockrell*, 537 U.S. 322, 347, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ("We adhere to the proposition that a state court need not make detailed findings addressing all the evidence before it.").

¶ 41 Opinions from federal circuit courts of appeal take a similar position to the one I take here. *See Taylor v. Roper*, 577 F.3d 848, 856 (8th Cir.2009) ("The trial court found that the reasons stated by the prosecutor were race-neutral, and overruled [the defendant's *Batson*] objection. The court's ruling includes an implicit finding that the prosecutor's explanation was credible, and that the strike was not motivated by purposeful discrimination."); *United States v. Corley*, 519 F.3d 716, 723 (7th Cir.2008) ("Although it would be more helpful for district courts in these *Batson* cases to explicitly make credibility determinations, and perhaps state on the record the basis for rejecting the comparisons with the similarly-situated jurors, there is no ambiguity in this record. The court accepted the government's argu-

ment, that determination is supported by the record, and it is not clearly erroneous."); *Hightower v. Terry,* 459 F.3d 1067, 1072 n. 9 (11th Cir.2006) ("We may ... make the common sense judgment—in light of ... the trial court's ultimate ruling—that the trial court implicitly found the ... race-neutral explanations to be credible, thereby completing step three of the *Batson* inquiry." (internal quotation marks omitted)); *Messiah v. Duncan,* 435 F.3d 186, 198 (2d Cir.2006) ("As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge."); *United States v. Castorena–Jaime,* 285 F.3d 916, 929–30 (10th Cir.2002) ("Notwithstanding the district court's failure to make express findings on the record ... the district court's ultimate conclusion on discriminatory intent was not clearly erroneous.... The district court's ruling indicates it implicitly found the prosecutor credible.").

¶ 42 Opinions from state appellate courts also take a similar position. *See People v. Reynoso,* 31 Cal.4th 903, 3 Cal.Rptr.3d 769, 74 P.3d 852, 869 (2003) (A trial court is not required "to make explicit and detailed findings for the record in every instance in which the court determines to credit a prosecutor's demeanor-based reasons for exercising a peremptory challenge."); *State v. Angelo,* 287 Kan. 262, 197 P.3d 337, 350 (2008) ("We agree that the better practice is for the trial court to identify and follow each of the *Batson* steps in its analysis and, in the third step, to clearly articulate something like 'the defendant has not carried his burden of proving purposeful discrimination.' Nevertheless, we conclude that [the defendant] has not shown that the trial court failed to follow *Batson* in rejecting his challenge.").

¶ 43 There are opinions that take a different approach. *See United States v. McAllister,* 693 F.3d 572, 581 (6th Cir.2012)(appellate court had no basis to defer to the trial court's ruling on *Batson's* third step because the trial court did not provide an explicit analysis of the prosecutor's credibility).

¶ 44 The trial court's unambiguous finding means only one thing to me in the context of this case: The trial court implicitly chose to believe the prosecutor, which was a choice that was "peculiarly within [its] province." *See Hernandez,* 500 U.S. at 365, 111 S.Ct. 1859. I therefore do not see this case as presenting the sort of "exceptional circumstances" that undercut the strong presumption that we should defer to that finding. *See Robinson,* 187 P.3d at 1173–74.

¶ 45 In light of my conclusion that the trial court's order is clear enough that we can review it, I also submit that there may not be a "realistic possibility that this subtle question of causation could be profitably explored further on remand." *See Snyder,* 552 U.S. at 486, 128 S.Ct. 1203. It has been over a year and a half since the trial court presided over defendant's trial. The trial court's attention has understandably shifted to many cases since then.

¶ 46 Our trial courts work on the front lines of the legal system. They are literally in the middle of litigation. They see and hear jurors, witnesses, and attorneys almost every day.

¶ 47 They see and hear things that we on the appellate courts cannot see or hear. They see how people act. They notice their facial expressions. They hear the tone in people's voices. They watch when someone struggles to answer a question, or when someone answers directly, firmly, and immediately. They observe body language. They can tell when someone appears inattentive or alert. They frequently make decisions about people's credibility. *Batson's* third step tasks them with considering these sorts of factors when deciding whether they believe prosecutors' explanations of the reasons for their peremptory challenges.

¶ 48 The trial court obviously thought that this issue was close because it admitted that it had "concerns." But, in the end, it made the call that it thought was right. I respectfully submit that we should not second-guess that call because we have not seen what the trial court saw, or heard what the trial court heard. *See Robinson,* 187 P.3d at 1173–74.

## II. Facial Attack on the Constitutionality of the Stalking Statute

¶ 49 It is my view that appellate courts should handle comparatively few legal issues for the first time in any criminal case. *See People v. Tillery*, 231 P.3d 36, 55–56 (Colo.App.2009)(Bernard, J., specially concurring), *aff'd on other grounds sub nom. People v. Simon*, 266 P.3d 1099 (Colo.2011). I therefore would not address unpreserved facial attacks on the constitutionality of statutes, such as the one here. *See People. v. Carrillo*, 2013 COA 3, ¶ 49, 297 P.3d 1028 (Bernard, J., specially concurring) . (citing *People v. Lesney*, 855 P.2d 1364, 1366 (Colo. 1993), and *People v. Cagle*, 751 P.2d 614, 619 (Colo.1988)); *Tillery*, 231 P.3d at 55; *but see People v. Houser*, 2013 COA 11, ¶ 35, 337 P.3d 1238 (concluding that the court of appeals should, "as a matter of discretion, take up an unpreserved challenge to the constitutionality of a statute, but only where doing so would clearly further judicial economy"); *People v. Allman*, 2012 COA 212, ¶¶ 16–17, 321 P.3d 557 (division chose to "exercise [its] discretion [to] reach defendant's unpreserved vagueness challenge" to a statute); *People v. Greer*, 262 P.3d 920, 937–39 (Colo.App.2011) (J. Jones, J., specially concurring) (concluding that the court of appeals should apply plain error analysis to certain unpreserved constitutional arguments).

¶ 50 By the time that the first unpreserved attack on the facial constitutionality of a statute arrives to us on appeal, trial courts may have heard several permutations of the argument. They see how the argument plays out over time and in different circumstances. They often have a richer understanding of the argument than we do because of that fuller context and because they will probably have to apply the statute repeatedly in future cases, perhaps as soon as the next case in front of them.

¶ 51 For these reasons, I prefer that trial courts have the first opportunity to evaluate facial constitutional attacks on statutes. Courts in other states have reached the same conclusion. *See Smith v. State*, 363 Ark. 456, 215 S.W.3d 626, 627 (2005); *Marks v. State*, 280 Ga. 70, 623 S.E.2d 504, 509 (2005); *State v. Schleicher*, 672 N.W.2d 550, 555 (Minn. 2003); *State v. Newlon*, 216 S.W.3d 180, 184 (Mo.Ct.App.2007); *People v. Snyder*, 91 A.D.3d 1206, 937 N.Y.S.2d 429, 432 n. 2 (2012); *State v. Lloyd*, 354 N.C. 76, 552 S.E.2d 596, 607 (2001); *Commonwealth v. Pestinikas*, 421 Pa.Super. 371, 617 A.2d 1339, 1345 n. 3 (1992); *but see, e.g., State v. Golding*, 213 Conn. 233, 567 A.2d 823, 827–28 (1989) (court sets out circumstances in which it will review unpreserved constitutional claims); *State v. Rhinehart*, 167 P.3d 1046, 1050 (Utah 2007) (court will address unpreserved attack on the constitutionality of a statute if there is "plain error or exceptional circumstances").